1

THE HONORABLE THOMAS S. ZILLY

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

RYAN DIAZ, et al.,

No. 2:19-cv-01116-TSZ

10

Plaintiffs,

MOTION TO COMPEL ARBITRATION
AND DISMISS

11

v.

12

NINTENDO OF AMERICA INC.,

NOTE ON MOTION CALENDAR:
December 23, 2019
Oral Argument Requested

13

Defendant.

14

15

16

17

18

19

20

21

22

23

24

25

26

MOTION TO COMPEL ARBITRATION AND
DISMISS (No. 2:19-cv-01116-TSZ)

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

146179474

1

2                                    **TABLE OF CONTENTS**

3                                                                                    **Page**

4   I.      INTRODUCTION ................................................................................. 1

5   II.     BACKGROUND .................................................................................. 1

6           A.      The Nintendo Switch and Joy-Con Controllers ............................ 1

7           B.      When Opening and Activating the Switch System, Purchasers Receive
                    Notice of Nintendo's End-User License Agreement ......................... 2
8
9           C.      When Switch Users Accept the EULA, They Agree to Mandatory
                    Individual Arbitration Unless They Opt Out of that Provision ............ 4

10          D.      Plaintiffs Have Ignored Their Agreements with Nintendo by Filing this
                    Lawsuit and by Asserting Their Claims on Behalf of a Putative Class ............... 5
11
12  III.    ARGUMENT ...................................................................................... 5

13          A.      Legal Standards for Compelling Arbitration ............................... 5

14                  1.      Procedural Grounds ................................................. 5

15                  2.      Federal Arbitration Act .............................................. 6
16
            B.      Plaintiffs and Nintendo Have Agreed to Arbitrate the Claims in this
                    Lawsuit ........................................................................ 7
17
            C.      Plaintiffs Accepted the EULA, Agreed to Mandatory Individual
18                  Arbitration, and Did Not Opt Out ........................................... 9
19
            D.      The Parties Delegated to the Arbitrator the Question of Whether Their
20                  Agreements to Arbitrate Encompass Plaintiffs' Claims ..................... 13

                    1.      The Arbitration Provision Clearly and Unmistakably Delegates
21                          Such Questions to the Arbitrator .................................. 13
22
                    2.      The Delegation Is Not Unconscionable .......................... 15
23
    IV.     CONCLUSION ................................................................................... 18

24

25

26

MOTION TO COMPEL ARBITRATION AND
DISMISS (No. 2:19-cv-01116-TSZ) – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

146179474

1
2

**TABLE OF AUTHORITIES**

3

**Cases**                                                                                           **Page**

4    *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83 (Cal. 2000) ...................... 16

5    *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333 (2011) ......................................................... 7

6    *Beture v. Samsung Elecs. Am., Inc.*, 2018 WL 4621586 (D.N.J. July 18, 2018)..................... 8 n.3

7    *Brennan v. Opus Bank*, 796 F.3d 1125 (9th Cir. 2015) ......................................................... 14, 15

8    *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495 (S.D.N.Y. 2017)....................................... 8 n.3

9    *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914 (9th Cir. 2011)............................ 13 n.5

10   *Chen v. Sierra Trading Post, Inc.*, 2019 WL 3564659 (W.D. Wash. Aug. 6, 2019)............. passim

11   *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126 (9th Cir. 2000)............................... 6

12   *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198 (9th Cir. 2002) ............................................ 17

13   *Coneff v. AT&T Corp.*, 673 F.3d 1155 (9th Cir. 2012)....................................................... 10 n.4

14   *Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114 (9th Cir. 2008).............................................. 13

15   *Dean Ritter Reynolds, Inc. v. Byrd.*, 470 U.S. 213 (1985)......................................................... 6

16   *Doe v. Project Fair Bid Inc.*, 2011 WL 3516073 (W.D. Wash. Aug. 11, 2011) ........................... 8

17   *Flores v. Uber Techs.*, 2018 WL 5937253 (N.D. Cal. Sept. 5, 2018) ................................... 14–15

18   *G.G. v. Valve Corp.*, 2017 WL 1210220 (W.D. Wash. Apr. 3, 2017).......................................... 17

19   *Graf v. Match.com, LLC*, 2015 WL 4263957 (C.D. Cal. July 10, 2015)...................................... 12

20   *Gutierrez v. FriendFinder Networks, Inc.*, 2019 WL 1974900 (N.D. Cal. May 3, 2019)........ 6, 13

21   *Henry Schein, Inc. v. Archer & White Sales, Inc.*, -- U.S. ---, 139 S. Ct. 524 (2019) ................. 13

22   *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)...................................................... 13

23   *In re Facebook Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155 (N.D. Cal. 2016) .......... 7, 8

24   *Krause v. Expedia Grp., Inc.*, 2019 WL 4447317 (W.D. Wash. Sept. 17, 2019)........................ 14

25   *Lemberg v. LuLaRoe, LLC*, 2018 WL 6927836 (C.D. Cal. Mar. 1, 2018) ................................... 6

26

MOTION TO COMPEL ARBITRATION AND
DISMISS (No. 2:19-cv-01116-TSZ) – ii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

146179474

**TABLE OF AUTHORITIES**

**Page**

*M.A. Mortenson Co. v. Timberline Software Corp.*, 93 Wn. App. 819 (Wash. Ct. App. 1999) ................................................................................................................ 10, 16

*Mamot v. Mastro*, 652 F.3d 982 (9th Cir. 2011) .......................................................... 13

*McLellan v. Fitbit, Inc.*, 2018 WL 1913832 (N.D. Cal. Jan. 24, 2018) ...................... 9, 11

*Mendoza v. Microsoft Inc.*, 2014 WL 4540225 (W.D. Wash. Sept. 11, 2014) ...................... 14, 17

*Michak v. Transnation Title Ins. Co.*, 148 Wn.2d 788 (Wash. 2003) ........................... 10

*Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201 (9th Cir. 2016) ............................... 15, 17

*Moule v. United Parcel Serv. Co.*, 2016 WL 3648961 (E.D. Cal. July 7, 2016) ................. 8, 9, 12

*Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171 (9th Cir 2014) ................................. 7, 8

*Novell, Inc. v. Unicom Sales, Inc.*, 2004 WL 1839117 (N.D. Cal. Aug. 17, 2004) ...................... 10

*Oakley v. GMRI, Inc.*, 2013 WL 5433350 (E.D. Wash. Sept. 27, 2013) ............................. 15–16

*Oliver v. First Century Bank, N.A.*, 2018 WL 1426877 (S.D. Cal. Mar. 22, 2018) ...................... 16

*Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069 (9th Cir. 2013) ........................ 14

*Perry v. MLB Advanced Media, L.P.*, 2018 WL 5861307 (C.D. Cal. May 30, 2018) ...................... 9

*Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165 (W.D. Wash. 2013) ........................... 7

*Pierce Cty. v. M.A. Mortenson Co.*, 2019 WL 1115859 (W.D. Wash. Mar. 11, 2019) ............... 18

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223 (Cal. 2012) ............................................................................................................ 16

*ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447 (7th Cir. 1996) ......................................... 10

*Rahimi v. Nintendo of Am., Inc.*, 936 F. Supp. 2d 1141 (N.D. Cal. 2013) ..................... 11

*Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63 (2010) ......................................... passim

*Romney v. Franciscan Med. Grp.*, 186 Wn. App. 728 (Wash. Ct. App. 2015) ..................... 16

*Salco Distributions, LLC v. iCode, Inc.*, 2006 WL 449156 (M.D. Fla. Feb. 22, 2006) ............ 8 n.3

*Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899 (Cal. 2015) ........................... 16

MOTION TO COMPEL ARBITRATION AND
DISMISS (No. 2:19-cv-01116-TSZ) – iii

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## TABLE OF AUTHORITIES

**Page**

*Schmidt v. Samsung Elecs. Am., Inc.*, 2017 WL 2289035 (W.D. Wash. May 25, 2017) ............. 14

*Sena v. Uber Techs.*, 2016 WL 1376445 (D. Ariz. Apr. 7, 2016) ................................................. 17

*Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635 (9th Cir. 1988) ........................................ 6

*Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904 (N.D. Cal. 2011) ................................ 8

*Tilden-Coil Constructors, Inc. v. Landmark Am. Ins. Co.*, 721 F. Supp. 2d 1007 (W.D.
    Wash. 2010) ...................................................................................................................... 8 n.3

*Tjart v. Smith Barney, Inc.*, 107 Wn. App. 885 (Wash. Ct. App. 2001) ...................................... 16

*Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510 (Wash. 2009) ................................. 16, 18

*Van Den Heuvel v. Expedia Travel*, 2017 WL 5133270 (E.D. Cal. Nov. 6, 2017) ...................... 9

*Veritas Constr., Inc. v. LBG 38, LLC*, 2017 WL 347476 (W.D. Wash. Jan. 24, 2017)................. 6

*Wickberg v. Lyft Inc.*, 356 F. Supp. 3d 179 (D. Mass. Dec. 19, 2018) ................................... 8 n.3

*Yu v. Volt Info. Scis., Inc.*, 2019 WL 3503111 (N.D. Cal. Aug. 1, 2019).................................... 14

**Statutes**

9 U.S.C. § 2 ................................................................................................................................... 6

9 U.S.C. § 3 ................................................................................................................................... 6

9 U.S.C. § 4 ................................................................................................................................... 6

**Rules**

Am. Arb. Ass'n Consumer R-14(a) ............................................................................................. 15

Federal Rule of Civil Procedure 12(b)(1) .................................................................................... 5

MOTION TO COMPEL ARBITRATION AND
DISMISS (No. 2:19-cv-01116-TSZ) – iv

146179474

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

## I.      INTRODUCTION

When Plaintiffs[1] chose to purchase and set up their Nintendo Switch video-game consoles, they agreed to individual arbitration of any claims. They so agreed after receiving notification of the End-User License Agreement, having the opportunity to easily review all terms and conditions that apply under that agreement, and affirmatively clicking "Accept." They did not stop the set-up process or decline the agreement. Nor did they opt out of arbitration, even though they had 30 days to do so.

Plaintiffs have ignored their agreement by filing a putative class action against Nintendo. Nintendo asks the Court to hold Plaintiffs to their agreement, as courts throughout the Ninth Circuit have done in similar circumstances, enforcing the Federal Arbitration Act's strong policy in favor of arbitration. Accordingly, Nintendo requests that the Court compel arbitration and dismiss or, in the alternative, stay Plaintiffs' action.

## II.      BACKGROUND

### A.      The Nintendo Switch and Joy-Con Controllers

On March 3, 2017, Nintendo released its Switch video-game console. Declaration of Kristopher Kiel in Support of Nintendo Motion to Compel Arbitration and Dismiss ("Kiel Decl.") ¶ 2. The Switch is a versatile gaming system that can be used as a traditional console or as a portable system. *Id.* ¶ 3. Switch users can play video games in three ways: TV mode, tabletop mode, or handheld mode. *Id.*

Each Switch comes with two Joy-Con controllers used to direct gameplay. *Id.* ¶ 4. The Joy-Con controllers themselves can also be used in several different ways. *Id.* A player can use one or both controllers and can use the controllers vertically or sideways, attached to or detached

---

[1] Plaintiffs and their states of residence are: Ryan Diaz (California); Jared Thompson (Florida); Ariel Enriquez (Arizona); Paul Barr (Massachusetts); John Rios (New Jersey); David Guy (Virginia); Lisandro Lizardo (New York); Chris Luebcke (California); Robert Foucha (North Carolina); Nicholas Yochheim (Nebraska); Alec Collins (Alabama); Zackery Reed (Idaho); Grant Hoelscher (Oklahoma); Michael Oren (Illinois); Nathan Ainsworth (Michigan); Jason Coffey-Wolfgang (Oregon); Eric Wilson (Ohio); and Lydia DeLoach (Washington).

MOTION TO COMPEL ARBITRATION AND
DISMISS (No. 2:19-cv-01116-TSZ) – 1

146179474

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   from the gaming console. *Id.* Consumers can also buy extra Joy-Con controllers either

2   individually or as a set of two. *Id.* ¶ 5.[2]

3         **B.     When Opening and Activating the Switch System, Purchasers Receive Notice
                    of Nintendo's End-User License Agreement**

4

5         When powering on a new Switch for the first time, the purchaser is asked to select a

6   preferred language and region.  *Id.* ¶ 10. Once the purchaser selects their preferred language and

7   region, the following screen—titled "End-User License Agreement"—informs the purchaser of

8   the terms that accompany the product ("EULA"). *Id.*; *see also id.* ¶ 8, Ex. A ("EULA"). The

9   EULA notice is the only subject displayed and addressed on that screen. *Id.* ¶¶ 9–11 & Ex. B.



19        On that screen, Nintendo informs purchasers that "By selecting the Accept button, you

20  acknowledge that you have read and agree to be bound by the End-User License Agreement. If

21  you do not agree, stop using this system." *Id.* ¶ 14. Right under that text, there is a hyperlink

22  button that allows the purchaser to immediately access—without an internet connection—the full

23  EULA. *Id.* ¶ 15. The hyperlink is prominently displayed: it is a box edged in pulsating bright

24  blue that says, "View End-User License Agreement." *Id.* ¶ 16.  The hyperlink to review the

25

26  ――――――――――――
     [2] In September 2019, Nintendo released the Switch Lite, a portable gaming system that has built-in
     controllers and does not utilize Joy-Con controllers. *Id.* ¶ 6. Although Plaintiffs' Amended Complaint references the
     Switch Lite, none of the Plaintiffs allege that they purchased the Switch Lite.

MOTION TO COMPEL ARBITRATION AND
DISMISS (No. 2:19-cv-01116-TSZ) – 2

146179474

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

EULA is above the box that the purchaser checks to accept it, ensuring that the purchaser sees it before accepting the terms. *Id.* The purchaser cannot merely advance to the next screen without accepting the EULA; they must physically press the "Accept" button or scroll down and select it. *Id.* ¶ 17. After the purchaser accepts the EULA, a checkmark appears next to the "Accept" button (confirming the acceptance), and the "Next" button transitions from an inactive gray-text box to an active black-text button. *Id.* Finally, to further confirm that the purchaser has chosen to accept the EULA before proceeding, they must then physically press the "Next" button or scroll down and select it before proceeding to use the Switch. *Id.*

The EULA "provides important information about [the consumer's] access to and use of [the Switch] video game console, its accessories, the Software . . . , and any services available using this [Switch]." EULA at 1. It begins by prominently notifying the purchaser that "THIS IS AN IMPORTANT AGREEMENT THAT APPLIES TO YOUR USE OF THIS NINTENDO VIDEO GAME CONSOLE!" and instructing them to "[p]lease read this Agreement carefully before using the Console." *Id.* It ends by telling purchasers that "[b]y clicking the 'Accept' option, you acknowledge that you have read and agree to be bound by the End User License Agreement." *Id.* at 3. The EULA also tells purchasers that if they do not wish to accept the EULA, they may stop the set-up process and return their Switch to the retailer from which the consumer bought the Switch for a full refund. *Id.* at 1. They cannot proceed without deciding to accept the EULA. Kiel Decl. ¶ 13.

Purchasers are also informed of the EULA on the standard Switch package as well as on some Special Edition packages. *Id.* ¶ 18. On the outside of that packaging, Nintendo tells purchasers that "[b]y using the Nintendo Switch system, you accept the license agreement available at support.nintendo.com/Switch/license." *Id.* The website directs the purchaser to choose a language and then immediately displays the EULA in full in the selected language. *Id.*

MOTION TO COMPEL ARBITRATION AND
DISMISS (No. 2:19-cv-01116-TSZ) – 3

146179474

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

**C.      When Switch Users Accept the EULA, They Agree to Mandatory Individual Arbitration Unless They Opt Out of that Provision**

By accepting the EULA, Switch purchasers agree to mandatory individual arbitration unless they opt out of that part of the EULA. The EULA's preamble—in all capital letters—informs purchasers of the arbitration and class waiver provision. EULA at 1. It states that the EULA

> CONTAINS A BINDING ARBITRATION AND CLASS ACTION WAIVER PROVISION IN SECTION 7 THAT AFFECTS YOUR RIGHTS UNDER THIS AGREEMENT AND WITH RESPECT TO ANY 'CLAIM' . . . BETWEEN YOU AND NINTENDO.

*Id.* In the very next sentence, again in all capital letters, the EULA informs purchasers that they have the right to opt out of the arbitration and class-action-waiver provisions: "YOU HAVE THE RIGHT TO OPT OUT OF THE PROVISION AS DESCRIBED IN SECTION 7." *Id.*

Section 7 of the EULA fully details the arbitration provision and class waiver. It provides that "[a]ny matter" Nintendo and a consumer "are unable to resolve" as well as "all disputes or claims arising out of or relating to" the EULA, "including its formation, enforceability, performance, or breach . . . shall be finally settled by binding arbitration." *Id.* at 2 (Section 7(A)). It further specifies that "[t]he parties understand that, absent this mandatory provision, they would have the right to sue in court and have a jury trial." *Id.* at 2 (Section 7(A)). The provision also states that any arbitration will be on an individual basis: "Any such arbitration shall be conducted by the parties in their individual capacities only and not as a class action or other representative action, and the parties waive their right to file a class action or seek relief on a class basis." *Id.*

Purchasers have two options if they do not want to agree to the arbitration provision. First, they can decline the EULA in its entirety by returning the Switch for a full refund. EULA at 1. That option is not merely an implicit understanding regarding the product use; it is explicitly outlined in the EULA: "If you purchased the [Switch] from an authorized retailer but

MOTION TO COMPEL ARBITRATION AND
DISMISS (No. 2:19-cv-01116-TSZ) – 4

146179474

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

do not agree to the terms of this Agreement, you may return the [Switch] for a refund in accordance with the applicable return policy." *Id.*

Second, purchasers can otherwise accept the EULA but opt out of the arbitration provision by providing written notice to Nintendo within 30 days of purchase. *Id.* at 3 (Section 7(D)). The opt-out provision again notifies purchasers that if they "do not send" the notice described, "then you agree to be bound by this Section 7." *Id.*

Nintendo maintains records of those who provide written notice that they are opting out of arbitration. Kiel Decl. ¶ 20. None of the Plaintiffs provided such notice. *Id.*

**D.      Plaintiffs Have Ignored Their Agreements with Nintendo by Filing this Lawsuit and by Asserting Their Claims on Behalf of a Putative Class**

On July 19, 2019, Plaintiff Ryan Diaz brought this putative class-action lawsuit against Nintendo, alleging that the Joy-Con controllers accompanying his Switch were defective because they "began registering movement without being manually controlled, or 'drifting.'" Compl., ECF No. 1 (July 19, 2019) ¶ 11. On September 27, 2019, he amended the Complaint and 17 other Plaintiffs joined him in this action. *See* Am. Compl., ECF No. 21 (Sept. 27, 2019).

Plaintiffs fail to acknowledge their agreement to the EULA. But they each allege facts demonstrating that they used the Switch systems they purchased, and to do so they had to accept the EULA. *See id.* ¶¶ 14, 22, 32, 41, 48, 55, 61, 68, 74, 80, 87, 96, 102, 115, 120, 129, 137; *see also* Kiel Decl. ¶ 13. And none of them allege that they returned the Switch before completing the set-up process or that they opted out of the EULA's arbitration provision (and Nintendo's records confirm that none of them did so). *See* Kiel Decl. ¶ 20.

**III.      ARGUMENT**

**A.      Legal Standards for Compelling Arbitration**

**1.      Procedural Grounds**

Nintendo brings this motion to dismiss (or alternatively stay) and to compel arbitration under Federal Rule of Civil Procedure 12(b)(1) and pursuant to the Federal Arbitration Act

MOTION TO COMPEL ARBITRATION AND
DISMISS (No. 2:19-cv-01116-TSZ) – 5

146179474

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

("FAA"), 9 U.S.C. § 4. "Courts have held that a motion to dismiss under Rule 12(b)(1) for lack of subject matter jurisdiction is a procedurally sufficient mechanism to enforce an arbitration provision." *Gutierrez v. FriendFinder Networks Inc.*, 2019 WL 1974900, at *2 (N.D. Cal. May 3, 2019) (quotation marks omitted) (citing *GT Sec., Inc. v. Klastech GmbH*, 2014 WL 2928013, at *17 (N.D. Cal. June 27, 2014)); *see also Lemberg v. LuLaRoe, LLC*, 2018 WL 6927836, at *3 (C.D. Cal. Mar. 1, 2018) ("While courts may disagree as to whether a motion to compel arbitration constitutes a motion pursuant to Rules 12(b)(1), 12(b)(3), or 12(b)(6), courts generally agree that such a motion is a Rule 12(b) motion.").

### 2.    Federal Arbitration Act

Under the FAA, an arbitration provision in an agreement involving a commercial transaction is "valid, irrevocable, and enforceable." 9 U.S.C. § 2. On a motion to compel arbitration, the Court determines only whether the parties agreed to arbitrate and, if so, whether their agreement encompasses the asserted claims. *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). If both conditions are met—or if there is a valid agreement to arbitrate and the parties have delegated the second question to an arbitrator—the Court must compel arbitration. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of discretion by a district court . . . ."); *Chiron Corp*, 207 F.3d at 1130; *see also* 9 U.S.C. § 3. Once the Court determines that Plaintiffs agreed to arbitrate their asserted claims, the Court must either dismiss or stay the action pending arbitration. *See Sparling v. Hoffman Constr. Co., Inc.*, 864 F.2d 635, 637-38 (9th Cir. 1988); *see also Veritas Constr., Inc. v. LBG 38, LLC*, 2017 WL 347476, at *1 (W.D. Wash. Jan. 24, 2017) (recognizing that "the Ninth Circuit has made clear that § 3 [of the FAA] does not limit the court's authority to grant a dismissal where the language contained in the arbitration provision is sufficiently broad to bar all of plaintiff's claims").

The FAA embodies a "national policy favoring arbitration" and its "overarching purpose . . . is to ensure the enforcement of arbitration agreements according to their terms so as

MOTION TO COMPEL ARBITRATION AND
DISMISS (No. 2:19-cv-01116-TSZ) – 6

146179474

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   to facilitate streamlined proceedings." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346

2   (2011). "In the Ninth Circuit, 'the most minimal indication of the parties' intent to arbitrate must

3   be given full effect.'" *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1169 (W.D. Wash.

4   2013) (quoting *Republic of Nicaragua v. Std. Fruit Co.*, 937 F.2d 469, 478 (9th Cir. 1991)).

5        Although Plaintiffs expressly agreed to mandatory arbitration on an individual basis, they

6   have ignored their agreement and filed a putative class action in federal court. The Court should

7   order them to abide by their agreements with Nintendo, compel arbitration, and dismiss the

8   action.

9        **B.      Plaintiffs and Nintendo Have Agreed to Arbitrate the Claims in this Lawsuit**

10       Plaintiffs agreed to the EULA, including its arbitration and class-waiver provision, and

11  did not opt out of that provision. Accordingly, they must arbitrate the claims they attempt to

12  assert here.

13       "The touchstone for all contracts, whether Internet digital or old school paper, is 'mutual

14  manifestation of assent, whether by written or spoken word or by conduct.'" *In re Facebook

15  Biometric Info. Privacy Litig.*, 185 F. Supp. 3d 1155, 1164 (N.D. Cal. 2016) (quoting *Nguyen v.

16  Barnes & Noble Inc.*, 763 F.3d 1171, 1175 (9th Cir 2014)) (quotation marks omitted). To make

17  this determination, the Court applies "ordinary state-law principles that govern the formation of

18  contracts." *Nguyen*, 763 F.3d at 1175. The Court determines whether someone has given mutual

19  assent by looking to "the reasonable meaning of the contract language instead of the subjective

20  intent of the parties." *Chen v. Sierra Trading Post, Inc.*, 2019 WL 3564659, at *2 (W.D. Wash.

21  Aug. 6, 2019); *see also Peters*, 2 F. Supp. 3d at 1170 (granting motion to compel arbitration after

22  finding mutual assent to clickwrap agreement). The key questions are whether the offeror

23  provided "'reasonable notice' of the proposed terms and whether the offeree 'unambiguously

24  manifest[ed] assent' to them." *Nguyen*, 763 F.3d at 1173.

25

26

MOTION TO COMPEL ARBITRATION AND
DISMISS (No. 2:19-cv-01116-TSZ) – 7

146179474

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Clickwrap or clickthrough agreements—like the EULA—are routinely enforced.[3] *See, e.g.*, *Doe v. Project Fair Bid Inc.*, 2011 WL 3516073, at *4 (W.D. Wash. Aug. 11, 2011) ("This kind of 'clickwrap' agreement has been upheld in several cases in this circuit and elsewhere."); *Facebook Biometric Info.*, 185 F. Supp. 3d at 1165 ("Although there is no per se rule of validity or invalidity on either end, our Circuit has recognized that the closer digital agreements are to the clickwrap end of the spectrum, the more often they have been upheld as valid and enforceable.").

In determining whether a consumer assented to such an agreement, courts "examine how the terms of an agreement were presented" and how purchasers indicate their "consent to the terms." *Moule v. United Parcel Serv. Co.*, 2016 WL 3648961, at *4 (E.D. Cal. July 7, 2016). "[D]esign and content of the website and the agreement's webpage" matter. *Nguyen*, 763 F.3d at 1177. The consumer has sufficient notice when the terms and conditions are presented by "a hyperlinked alert" and the consumer "takes an affirmative action to demonstrate assent to" the terms. *Chen*, 2019 WL 3564659, at *2; *see also Swift v. Zynga Game Network, Inc.*, 805 F. Supp. 2d 904, 912 (N.D. Cal. 2011) (upholding enforceability of modified clickwrap agreement "[b]ecause Plaintiff was provided with an opportunity to review the terms of service in the form of a hyperlink immediately under the 'I accept' button and she admittedly clicked 'Accept.'").

---

[3] Washington courts apply the law of the forum state unless there is an actual conflict of law. *See Tilden-Coil Constructors, Inc. v. Landmark Am. Ins. Co.*, 721 F. Supp. 2d 1007, 1013 (W.D. Wash. 2010) ("Absent an actual conflict, Washington law presumptively applies."). Plaintiffs are residents of 17 different states, but the case law on the enforceability of clickwrap and clickthrough agreements does not meaningfully differ among those states. The key inquiry for such agreements is whether a consumer agreed to be bound by the terms and conditions in the agreement, and states uphold such agreements when a consumer so assents. *See, e.g.*, *Salco Distributions, LLC v. iCode, Inc.*, 2006 WL 449156, at *2 (M.D. Fla. Feb. 22, 2006) ("In Florida and the federal circuits, shrinkwrap and clickwrap agreements are valid and enforceable contracts."); *Beture v. Samsung Elecs. Am., Inc.*, 2018 WL 4621586, at *2 (D.N.J. July 18, 2018) ("Under New Jersey law, when a party uses his computer to click on a button signifying his acceptance of terms and conditions in connection with an online transaction, he thereby manifests his assent to an electronic agreement." (internal quotation marks omitted)); *Broker Genius, Inc. v. Zalta*, 280 F. Supp. 3d 495, 521 (S.D.N.Y. 2017) ("The Terms of Use are contained within a clickwrap agreement, which requires users to expressly assent and makes its contents viewable following a hyperlink. As such, the agreement is enforceable so long as it provides "reasonably conspicuous notice of the existence of contract terms" and requires an "unambiguous manifestation of assent to those terms."); *Wickberg v. Lyft Inc.*, 356 F. Supp. 3d 179, 182 (D. Mass. Dec. 19, 2018) ("Under Massachusetts law, courts have held that . . . clauses [in online contracts] will be enforced provided they have been reasonably communicated and accepted and if, considering all the circumstances, it is reasonable to enforce the provision at issue." (internal quotation marks omitted; ellipsis and alteration in original)).

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15

When, as here, a consumer affirmatively accepts by clicking a button on a page that displays a distinguishable hyperlink to the terms, the agreement will be enforced. *See, e.g.*, *Chen*, 2019 WL 3564659, at *2; *McLellan v. Fitbit, Inc.*, 2018 WL 1913832, at *2 (N.D. Cal. Jan. 24, 2018) (holding that a valid contract was formed because plaintiffs "each clicked a box next to a hyperlinked terms of service (or took equivalent action on a mobile platform) that stated, I agree to the Fitbit Terms of Service and Privacy Policy" (internal quotation marks omitted)); *Moule*, 2016 WL 3648961, at *5 ("Because it is undisputed that Plaintiff had the opportunity to view the Terms and Conditions and clicked the 'Yes' button to process the shipment, the Court finds Plaintiff manifested assent to the UPS Terms when arranging the shipment at issue"); *Van Den Heuvel v. Expedia Travel*, 2017 WL 5133270, at *3 (E.D. Cal. Nov. 6, 2017), *adopting rep. & rec.*, 2017 WL 6512945 (E.D. Cal. Dec. 20, 2017) ("Plaintiff had adequate notice of the Terms of Service, and he affirmatively assented to the Terms by clicking the 'complete booking' button."); *Perry v. MLB Advanced Media, L.P.*, 2018 WL 5861307, at *3 (C.D. Cal. May 30, 2018) ("This agreement took the form of her clicking a 'Buy & Accept Terms' button located immediately above a hyperlink, which directed Plaintiff to Defendant's Terms of Use.").

16
17

### C.     Plaintiffs Accepted the EULA, Agreed to Mandatory Individual Arbitration, and Did Not Opt Out

18
19
20
21
22
23
24
25
26

Nintendo gave Plaintiffs' notice of the EULA and how to review its terms in at least two ways: on their Switch's start-up screen before they could use the product and on the standard box. Kiel Decl. ¶¶ 14–18. After selecting their preferred language and their region during the Switch set-up process, the EULA page was displayed on their devices. *Id.* ¶ 10. The EULA was the only subject matter on that screen and stated that Plaintiffs would be bound by the EULA if they selected the Accept button. *Id.* ¶¶ 11, 14. It directed their attention—by way of the hyperlinked button outlined in pulsating bright blue that said "View End-User License Agreement"—to the terms of the EULA. *Id.* ¶¶ 15–16; *see also Chen*, 2019 WL 3564659, at *3 (finding valid clickwrap agreement where "the word 'Term' in the Consent line, which

MOTION TO COMPEL ARBITRATION AND
DISMISS (No. 2:19-cv-01116-TSZ) – 9

146179474

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

hyperlinks directly to the [terms], is both capitalized and underlined and thus distinguishable from the surrounding text"). Plaintiffs were therefore on notice of and had ample opportunity to view the terms of the EULA—including the arbitration provision and its class-action-waiver clause—before agreeing.[4] Washington law is clear that a party is bound to a contract it signs, even if the party has not actually read the contract. *See Michak v. Transnation Title Ins. Co.*, 148 Wn.2d 788, 799 (Wash. 2003).

The Switch's standard packaging and some Special Edition packages also notified Plaintiffs that they would be agreeing to the EULA by using the gaming system and directed them to access online the EULA's terms. *See* Kiel Decl. ¶ 18. By opening up the box and using the Switch, they also assented to the EULA. *See, e.g.*, *M.A. Mortenson Co. v. Timberline Software Corp.*, 93 Wn. App. 819, 830–31 (Wash. Ct. App. 1999), *aff'd*, 140 Wash.2d 568 (Wash. 2000) ("We find that Mortenson's installation and use of the software manifested its assent to the terms of the license and that it is bound by all terms of that license that are not found to be illegal or unconscionable."); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1449 (7th Cir. 1996) (holding that shrinkwrap agreements are enforceable unless some contractual defense applies); *Novell, Inc. v. Unicom Sales, Inc.*, 2004 WL 1839117, at *11 (N.D. Cal. Aug. 17, 2004) ("Contracts contained in software boxes, which are sometimes referred to as 'shrink wrap licenses,' are no less enforceable than any other type of contract."). The language on the box directed Plaintiffs to the website with the EULA's full text where they could review it before opening the box and before agreeing to those terms.

Plaintiffs had multiple opportunities to reject the EULA altogether or to opt out of the arbitration provision. They chose to decline those opportunities. First, they had the choice to stop the set-up process if they did not agree to the EULA, and they were informed of that option both on the set-up screen and in the EULA itself. They were therefore "perfectly free to reject" the

---

[4] Class-action waivers are not substantively unconscionable. *See Coneff v. AT&T Corp.*, 673 F.3d 1155, 1159–61 (9th Cir. 2012) ("[T]he FAA preempts the Washington state law [articulated in *Scott v. Cingular Wireless*, 160 Wn.2d 843 (Wash. 2005)] invalidating the class-action waiver.").

MOTION TO COMPEL ARBITRATION AND
DISMISS (No. 2:19-cv-01116-TSZ) – 10

146179474

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

EULA "and return the [Switch] for a refund," and they cannot "show[] any barriers to exercising that option." *McLellan*, 2018 WL 1913832, at *3. All of the Plaintiffs allege that they used the Switch systems they purchased, which they could not have done had they not given their assent to the EULA. Kiel Decl. ¶ 13. Second, none of the Plaintiffs exercised their right to opt out. *Id.* ¶ 20. Therefore, Plaintiffs agreed to individual arbitration with Nintendo.

The Northern District of California reached a similar conclusion on nearly the same facts as those present here, concluding that the plaintiff had agreed to arbitrate his claims with Nintendo based on a prior—but substantially similar—version of Nintendo's EULA. In *Rahimi v. Nintendo of America Inc.*, the court considered whether the purchaser of a Nintendo Wii U video-game system—a precursor to the Switch—agreed to arbitrate his purported class-action claims against Nintendo regarding an alleged defect with that system. 936 F. Supp. 2d 1141, 1142 (N.D. Cal. 2013). As with the current EULA and the Switch system, the packaging on the system Rahimi bought notified him that he would be accepting the EULA by using the system and Rahimi had to accept the EULA as part of the set-up process. *Id.* The EULA to which Rahimi agreed also contained a mandatory-arbitration provision, highlighted the option to reject the EULA by returning the Wii U system, and provided an opportunity to opt out of arbitration. *Id.* at 1143. The court held that Rahimi was "bound by the terms of the EULA, including Section 6's requirement that disputes be settled by binding arbitration," because "after selecting 'Agree' on the start up screen, Rahimi used each of the Wii U systems that he purchased" and "he did not opt out of the EULA's binding arbitration provision by sending written notice to Nintendo." *Id.* at 1144. The court ordered Rahimi to arbitrate his claims against Nintendo. *Id.*

Moreover, a vast body of case law in the Ninth Circuit (and elsewhere) confirms that agreements to arbitrate formed in this manner are enforceable. This District, for example, concluded that the parties had entered into a "valid agreement to arbitrate" when the plaintiff accepted the terms of use after receiving adequate notice of them and having an opportunity to review before accepting. *Chen*, 2019 WL 3564659, at *3. There, to accept the terms of use,

MOTION TO COMPEL ARBITRATION AND
DISMISS (No. 2:19-cv-01116-TSZ) – 11

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

the user does not need to scroll beyond the 'Place my Order' button to find the Consent line, which explicitly states that the user agrees to the "Terms" by placing the purchase order. Moreover, the word 'Term' in the Consent line, which hyperlinks directly to the [terms of use], is both capitalized and underlined and thus distinguishable from the surrounding text. Under these circumstances, the Court finds [the plaintiff] had inquiry notice of the [terms of use].

*Id.* at *2-3 (internal citations omitted).

The District Court for the District of Northern California in *Moule v. United Parcel Serv. Co.* reached the same conclusion on similar facts. In that case, "the UPS shipper was informed: 'By clicking the Yes button, you agree to the UPS Tariff/Terms and Conditions.'" 2016 WL 3648961, at *5. And "immediately below this statement, and above the 'Yes' button, a hyperlink to the 'Terms and Conditions' was provided." *Id.* The court held that the parties formed a valid agreement to arbitrate "[b]ecause it is undisputed that Plaintiff had the opportunity to view the Terms and Conditions and clicked the 'Yes' button to process the shipment" *Id.* (internal citations and footnote omitted).

And to highlight just one more example, the same court enforced an arbitration provision contained within terms of use where "all users of the . . . website during the relevant time period were required to affirmatively agree to the Terms of Use when they clicked on a 'Continue' or other similar button on the registration page where it was explained that by clicking on that button, the user was affirming that they would be bound by the Terms of Use, which were always hyperlinked and available for review." *Graf v. Match.com, LLC*, 2015 WL 4263957, at *4 (C.D. Cal. July 10, 2015).

Plaintiffs accepted the EULA and its arbitration provision in the same manner as have the plaintiffs in scores of cases throughout the Ninth Circuit. Consistent with that case law, the Court should conclude that Plaintiffs' accepted the EULA and its arbitration provision, order them to arbitrate in accordance with that agreement, and dismiss this action.

MOTION TO COMPEL ARBITRATION AND
DISMISS (No. 2:19-cv-01116-TSZ) – 12

146179474

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

### D. The Parties Delegated to the Arbitrator the Question of Whether Their Agreements to Arbitrate Encompass Plaintiffs' Claims

The only other question is whether the arbitration agreement extends to Plaintiffs' claims, but the parties have delegated that question to the arbitrator. *See Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114, 1119 (9th Cir. 2008). The U.S. Supreme Court recently confirmed that the FAA "allows parties to agree by contract that an arbitrator, rather than a court, will resolve threshold arbitrability questions as well as underlying merits disputes."[5] *Henry Schein, Inc. v. Archer & White Sales, Inc.*, -- U.S. ---, 139 S. Ct. 524, 527 (2019). Such delegation clauses are "additional, antecedent agreement[s] the party seeking arbitration asks the federal court to enforce" and thus "the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 70 (2010). Delegation clauses, therefore, are enforceable and "valid under § 2 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Id.* (quoting 9 U.S.C. § 2). Arbitrability questions are delegated to the arbitrator when the parties "clearly and unmistakably" agree to so submit them, *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002), and the Court "may not decide the arbitrability issue," *Archer & White*, 139 S. Ct. at 530.

### 1. The Arbitration Provision Clearly and Unmistakably Delegates Such Questions to the Arbitrator

Where an arbitration provision specifies that the enforceability, validity, or application of any part of that provision is itself subject to binding arbitration, the parties have agreed to delegate matters of arbitrability. *Rent-A-Ctr.*, 561 U.S. at 68; *Mamot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011); *see also Guiterrez*, 2019 WL 1974900, at *9. In addition, an arbitration provision's incorporation by reference of the American Arbitration Association's ("AAA") rules "constitutes clear and unmistakable evidence that the contracting parties agreed to arbitrate arbitrability." *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015). Indeed, "[v]irtually

---

[5] "[T]he courts should apply federal arbitrability law absent 'clear and unmistakable evidence' that the parties agreed to apply non-federal arbitrability law." *Cape Flattery Ltd. v. Titan Maritime, LLC*, 647 F.3d 914, 921 (9th Cir. 2011).

MOTION TO COMPEL ARBITRATION AND
DISMISS (No. 2:19-cv-01116-TSZ) – 13

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

every circuit to have considered the issue has determined that incorporation of the American Arbitration Association's (AAA) arbitration rules constitutes clear and unmistakable evidence that the parties agreed to arbitrate arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1074 (9th Cir. 2013). Courts in the Ninth Circuit routinely find delegation when the parties incorporate AAA rules into their agreement because those rules provide that the arbitrator has the power to rule on jurisdiction, including the scope of the agreement to arbitrate. *See Chen*, 2019 WL 3564659, at \*4 ("Ultimately, the greater weight of authority since *Brennan*, including within this District concludes that *Brennan*'s holding also applies to disputes involving non-sophisticated parties."); *Krause v. Expedia Grp., Inc.*, 2019 WL 4447317, at \*5 (W.D. Wash. Sept. 17, 2019) ("In the present case, the Delegation Clause expressly cites the AAA rules. Thus, the parties have delegated the question of arbitrability to the arbitrator . . . ." (citation omitted)); *Mendoza v. Microsoft Inc.*, 2014 WL 4540225, at \*4 (W.D. Wash. Sept. 11, 2014) (holding that incorporation of AAA rules meant "[d]elegation of arbitrability to the arbitrator includes the sort of enforceability arguments that [plaintiffs] make"); *Yu v. Volt Info. Scis., Inc.*, 2019 WL 3503111, at \*4 (N.D. Cal. Aug. 1, 2019) (finding delegation where AAA employment rules were incorporated into arbitration provision); *Schmidt v. Samsung Elecs. Am., Inc.*, 2017 WL 2289035, at \*6 (W.D. Wash. May 25, 2017) (holding that incorporation of AAA rules within consumer transaction was "'clear and unmistakable' evidence of intent to delegate arbitrability to arbitrator").

The EULA does both. First, the arbitration provision states that the parties agree all "disputes and agreements," including those related to the EULA's "formation, enforceability, performance, or breach," are to "be finally settled by binding arbitration." EULA at 2 (Section 7(A)). The parties thus agreed that enforcement of the arbitration provision is itself an issue to be arbitrated. *See Rent-a-Ctr.*, 561 U.S. at 68 (affirming finding of delegation where agreement gave the arbitrator "exclusive authority to resolve any dispute relating to the enforceability of this Agreement"); *see also Flores v. Uber Techs.*, 2018 WL 5937253, at \*4

MOTION TO COMPEL ARBITRATION AND
DISMISS (No. 2:19-cv-01116-TSZ) – 14

146179474

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

(N.D. Cal. Sept. 5, 2018) (collecting cases in which courts found delegation of arbitrability based on contractual language similar to that in the EULA).

Second, the EULA incorporates the AAA rules, which permit arbitrators to determine questions of their jurisdiction. *See* Am. Arb. Ass'n Consumer R-14(a) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement . . . ."); *Brennan*, 796 F.3d at 1130 (affirming the district court's holding that "the Delegation Provision clearly and unmistakable delegated to an arbitrator the question whether the Arbitration Clause was enforceable by expressly incorporating the AAA arbitration rules, one of which provides that the 'arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the validity of the arbitration agreement'" (quotation marks omitted)). By expressly stating that questions of arbitrability are for the arbitrator and by incorporating the AAA rules in the EULA, the agreement shows an unmistakable intent to delegate any issues about the EULA's scope. *See Chen*, 2019 WL 3564659, at *4 ("[T]he Court finds that the issue of arbitrability is delegated to the arbitrator and will not address Chen's remaining contentions concerning the scope of the agreement.").

## 2.     The Delegation Is Not Unconscionable

Where the parties have agreed to delegate an issue to the arbitrator, the Court considers only whether that agreement to delegate "is itself unconscionable." *Brennan*, 796 F.3d at 1132. "When considering an unconscionability challenge to a delegation provision, the court must consider only arguments 'specific to the delegation provision.'" *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1210 (9th Cir. 2016) (quoting *Rent-A-Ctr.*, 561 U.S. at 73). Indeed, courts appear to rarely address whether a delegation provision is unconscionable because the party opposing arbitration typically misses the mark and focuses its unconscionability arguments on the agreement as a whole. *See, e.g.*, *Rent-A-Ctr.*, 561 U.S. at 72 ("The District Court correctly concluded that [the plaintiff] challenged only the validity of the contract as a whole."); *Oakley v.*

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

*GMRI, Inc.*, 2013 WL 5433350, at *2 (E.D. Wash. Sept. 27, 2013) ("Plaintiff did not attack the delegation clause separately as unenforceable. Rather, Plaintiff argues the entire arbitration agreement is unconscionable and unenforceable. Thus, as instructed in *Rent-A-Center*, the Court is not permitted to address the threshold question of arbitrability, rather it must treat the delegation clause as valid and enforce section 3 of the FAA."); *Oliver v. First Century Bank, N.A.*, 2018 WL 1426877, at *2 (S.D. Cal. Mar. 22, 2018) ("Pursuant to *Rent-A-Center*, Plaintiff's argument that a challenge to the whole of the agreement necessarily includes a specific challenge to the delegation clause, necessarily fails.").

A contract may be procedurally or substantively unconscionable.[6] *See M.A. Mortenson*, 140 Wn.2d at 585. Plaintiffs bear the burden of proving any unconscionability defense, a burden they will not be able to meet in this case. *See Tjart v. Smith Barney, Inc.*, 107 Wn. App. 885, 894 (Wash. Ct. App. 2001).

A contract is procedurally unconscionable if there was "impropriety during the formation of the contract." *Romney v. Franciscan Med. Grp.*, 186 Wn. App. 728, 735 (Wash. Ct. App. 2015). There must be "blatant unfairness in the bargaining process and a lack of meaningful choice." *Torgerson v. One Lincoln Tower, LLC*, 166 Wn.2d 510, 518 (Wash. 2009). "Factors to be considered include the manner in which the contract was created, whether both parties had a reasonable opportunity to understand the terms of the agreement, and whether important terms were buried in a lot of fine print." *Romney*, 186 Wn. App. at 735–36 (internal quotation marks omitted). Nintendo informed Plaintiffs of the EULA, including the delegation clause in the arbitration provision, during the set-up screen and gave Plaintiffs an opportunity to review its terms. *See M.A. Mortenson*, 93 Wn. App. at 836, *aff'd*, 140 Wn.2d 568. ("The introductory

---

[6] Other jurisdictions, including California, require both procedural and subjective unconscionability before finding that an agreement is unconscionable. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 114 (Cal. 2000). "The procedural element of unconscionability focuses on oppression or surprise due to unequal bargaining power." *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (Cal. 2012). The substantive element of unconscionability focuses on whether the agreement is "unduly oppressive," "unreasonably favorable," or "shocks the conscience." *Sanchez v. Valencia Holding Co., LLC*, 61 Cal. 4th 899, 912 (Cal. 2015).

MOTION TO COMPEL ARBITRATION AND
DISMISS (No. 2:19-cv-01116-TSZ) – 16

146179474

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

screen warned that use of the program was subject to a license. This warning placed Mortenson on notice that use of the software was governed by a license. Mortenson had reasonable opportunity to learn and understand the terms of the agreement. The limitations provision was not hidden in a maze of fine print but appeared in all capital letters. Finally, such limitations provisions are widely used in the computer software industry."). Moreover, the EULA notified consumers in capital letters that it affected their rights and in the first paragraph notified them again in capital letters of the arbitration provision (which includes the delegation clause). *See Mendoza*, 2014 WL 4540225, at *2 (compelling arbitration because plaintiffs assented to a clickwrap agreement that contained "prominent and conspicuous arbitration provisions" described "in bold capital letters").

And beyond that, Nintendo gave Plaintiffs at least two opportunities to reject it: by declining to accept the EULA's terms and returning their Switch or by opting out of the arbitration provision, including the delegation clause. *See Mohamed*, 848 F.3d at 1213 (concluding that because contract included a way to opt out of the arbitration provision, the delegation was not unconscionable); *Sena v. Uber Techs.*, 2016 WL 1376445, at *6 (D. Ariz. Apr. 7, 2016), *recon. denied*, 2016 WL 4064584 (D. Ariz. May 3, 2016) (holding that opt-out provision meant plaintiff "was not required to accept the Arbitration Provision" and "the Delegation Clause is not procedurally unconscionable"). Plaintiffs also had 30 days to opt out, giving them time to make a considered decision. *Circuit City Stores, Inc. v. Ahmed*, 283 F.3d 1198, 1199 (9th Cir. 2002) (reviewing arbitration agreement that provided a 30-day opt-out period and holding that an arbitration agreement is not adhesive if there is "a meaningful opportunity" to opt out of it); *Romney*, 186 Wn. App. at 737 ("An adhesion contract is not necessarily procedurally unconscionable."); *G.G. v. Valve Corp.*, 2017 WL 1210220, at *3 (W.D. Wash. Apr. 3, 2017) (rejecting argument that arbitration agreement was unconscionable because "it is a contract of adhesion").

MOTION TO COMPEL ARBITRATION AND
DISMISS (No. 2:19-cv-01116-TSZ) – 17

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

1   A contractual provision is substantively unconscionable only if it is "one-sided," "overly

2   harsh," "[s]hocking to the conscience," "monstrously harsh," or "exceedingly calloused."

3   *Torgerson*, 166 Wn.2d at 518 (internal quotation marks omitted). Plaintiffs say nothing in their

4   Complaint about any perceived unfairness or lopsidedness in Nintendo's favor. Nor could they,

5   because the delegation clause provides for an adequate and fair means of dispute resolution. *See*

6   *Pierce Cty. v. M.A. Mortenson Co.*, 2019 WL 1115859, at *3 (W.D. Wash. Mar. 11, 2019),

7   *appeal docketed*, No. 19-35257 (9th Cir. Apr. 1, 2019) ("The Contract's arbitration agreement

8   incorporating the AAA rules is not one-sided or overly harsh, and it appears to provide the

9   Parties with an agreed-upon, speedy, and adequate form of dispute resolution."). Nintendo also

10  agreed to pay the arbitration-initiation costs and arbitrator fees in certain circumstances. *See*

11  EULA at 3 (Section 7(B)).

12  Because the delegation is not unconscionable, whether Plaintiffs' claims fall within the

13  EULA's scope (they do) is a question for the arbitrator.

14  ## IV.   CONCLUSION

15  Because Plaintiffs agreed to arbitrate any claims against Nintendo on an individual basis,

16  Nintendo requests that the Court grant its motion to compel arbitration and dismiss or, in the

17  alternative, stay Plaintiffs' action.

18

19

20

21

22

23

24

25

26

MOTION TO COMPEL ARBITRATION AND
DISMISS (No. 2:19-cv-01116-TSZ) – 18

146179474

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA  98101-3099
Phone:  206.359.8000
Fax:  206.359.9000

Dated: November 1, 2019

By:  s/ Eric J. Weiss
      _____

David J. Burman, WSBA No. 10611
Eric J. Weiss, WSBA No. 44807
Mallory Gitt Webster, WSBA No. 50025
**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Fax: 206.359.9000
Email: DBurman@perkinscoie.com
Email: EWeiss@perkinscoie.com
Email: MWebster@perkinscoie.com

*Attorneys for Nintendo of America Inc.*

MOTION TO COMPEL ARBITRATION AND
DISMISS (No. 2:19-cv-01116-TSZ) – 19

146179474

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

**CERTIFICATE OF SERVICE**

I certify under penalty of perjury that on November 1, 2019, I caused to be electronically filed the foregoing Motion to Compel Arbitration and Dismiss with the Clerk of the Court using the CM/ECF system, which will send a notification of the filing to the email addresses indicated on the Court's Electronic Mail Notice List.

Dated: November 1, 2019

s/ Mallory Gitt Webster
Mallory Gitt Webster, WSBA No. 50025

CERTIFICATE OF SERVICE – 1

146179474

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000