1

2

HON. THOMAS S. ZILLY

3

4

5

6

7              IN THE UNITED STATES DISTRICT COURT
            FOR THE WESTERN DISTRICT OF WASHINGTON
8                          AT SEATTLE

9   RYAN DIAZ, JARED THOMPSON, ARIEL         NO. 2:19-cv-01116-TSZ
    ENRIQUEZ, PAUL BARR, JOHN RIOS,
10  DAVID GUY, LISANDRO LIZARDO, CHRIS       **PLAINTIFFS' OPPOSITION TO**
    LUEBCKE, ROBERT FOUCHA, NICHOLAS         **DEFENDANT'S MOTION TO**
    YOCHHEIM, ALEC COLLINS, ZACKERY          **COMPEL ARBITRATION AND**
11  REED, GRANT HOELSCHER, MICHAEL           **DISMISS**
    OREN, NATHAN AIMSWORTH, JASON
12  COFFEY-WOLFGANG, ERIC WILSON,
    LYDIA DELOACH,
13
                      Plaintiffs,            **NOTE ON MOTION CALENDAR:**
14                                           **December 23, 2019**
         v.                                  **Oral Argument Requested**
15
    NINTENDO OF AMERICA, INC.,
16
                      Defendant.

17

18

19

20

21

22

23

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION      **TOUSLEY BRAIN STEPHENS PLLC**
TO COMPEL ARBITRATION AND DISMISS                1700 Seventh Avenue, Suite 2200
                                                 Seattle, Washington 98101
                                                 TEL. 206.682.5600 • FAX 206.682.2992

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

## **TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................. 1

II.     FACTUAL AND PROCEDURAL OVERVIEW .............................................. 3

        A.  Background ................................................................................................ 3

        B.  The Switch, Switch Lite, and Joy-Cons ................................................... 3

        C.  The Drift Defect ........................................................................................ 4

        D.  Plaintiffs Purchased Defective Switches and Defective Additional Joy-Cons .......... 5

III.    LEGAL STANDARD ........................................................................................ 6

IV.     ARGUMENT ...................................................................................................... 7

        A.  Washington choice of law principles require the court to apply the law of Plaintiffs'
            home states' in the contract interpretation analysis. ................................. 7

        B.  The arbitration provision is invalid as to Plaintiffs' California statutory
            claims for all consumers because it purports to prohibit public injunctive relief in
            any forum. ................................................................................................ 10

        C.  There is no arbitration clause that applies to separately purchased Joy-Cons, so
            claims relating to these Joy-Cons cannot be compelled to arbitration. ................... 21

        D.  Should the Court order arbitration on any claims, this action should be stayed, not
            dismissed, as to those claims. ................................................................... 23

V.      CONCLUSION ................................................................................................ 24

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

4

*Abdalla v. Sec. Indus. Specialists, Inc.*,
5    No. C13-1674RAJ, 2014 U.S. Dist. LEXIS 39553 (W.D. Wash. Mar. 24,
2014) ............................................................................................................................7

6

*Al-Safin v. Circuit City Stores, Inc.*,
7    394 F.3d 1254 (9th Cir. 2005) (noting that the Washington Supreme Court
has declined to resolve whether procedural unconscionability, standing
8    alone, is sufficient) ......................................................................................................8

*AT&T Mobility LLC v. Concepcion*,
9    563 U.S. 333 (2011) ....................................................................................................8

10 *Bekele v. Lyft, Inc.*,
    199 F. Supp. 3d 284 (D. Mass. 2016) .........................................................................8

11

*Big Picture Grp. LLC v. Pate*,
12    No. CV 14-00569 DMG, 2014 U.S. Dist. LEXIS 199013 (C.D. Cal. June 17,
2014) ............................................................................................................................6

13

*Blair v. Rent-A-Center, Inc.*,
14    928 F.3d 819 (9th Cir. 2019) ...................................................................2, 12, 14, 17

15 *Blue Cross Blue Shield of Ala. v. Rigas*,
    923 So. 2d 1077 (Ala. 2005) ......................................................................................8

16
*Carideo v. Dell, Inc.*,
17    706 F. Supp. 2d 1122 (W.D. Wash. 2010) ..............................................................8, 9

*Chalk v. T-Mobile USA, Inc.*,
18    560 F.3d 1087 (9th Cir. 2009) ..................................................................................19

19 *Davis v. Fenton*,
    26 F. Supp. 3d 727 (N.D. Ill. 2014) ...........................................................................8

20
*Delisle v. Speedy Cash*,
21    No. 18-cv-2042, 2019 U.S. Dist. LEXIS 172276 (S.D. Cal. Oct. 3, 2019) ..............13

22 *Detweiler v. T-Mobile USA, Inc.*,
    No. C07-2090RAJ, 2008 U.S. Dist. LEXIS 106927 (W.D. Wash. May 2,
23    2008) ............................................................................................................................9

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - ii

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*Dist. Council 16 Int'l Union of Painters and Allied Trades v. LML Enters., Inc.*,
   2013 WL 3802903 (N.D. Cal. July 18, 2013) ........................................................24

*Dornaus v. Best Buy Co., Inc.*,
   No. 18-cv-04085, 2019 U.S. Dist. LEXIS 24522 (N.D. Cal. Feb. 14, 2019)......13, 17, 18, 24

*Eiess v. USAA Fed. Sav. Bank*,
   No. 19-cv-00108-EMC, 2019 U.S. Dist. LEXIS 144026 (N.D. Cal. Aug. 23,
   2019)................................................................................................................13, 15

*Granite Rock Co. v. Int'l Bhd. Of Teamsters*,
   561 U.S. 287 (2014) ...................................................................................................6

*Hanson v. MGM Resorts Int'l*,
   No. C16-1661-RAJ, 2017 U.S. Dist. LEXIS 113690 (W.D. Wash. July 20,
   2017)..........................................................................................................................10

*Harbers v. Eddie Bauer, LLC*,
   No. C19-1012JLR, 2019 U.S. Dist. LEXIS 200703 (W.D. Wash. Nov. 19,
   2019)............................................................................................................................6

*Hodges v. Comcast Cable Commc'ns, LLC*,
   No. 18-cv-01829-HSG, 2019 U.S. Dist. LEXIS 120205 (N.D. Cal. July 18,
   2019)..........................................................................................................................20

*Howard v. Ferrellgas Partners, L.P.*,
   748 F.3d 975 (10th Cir. 2014) (Gorsuch, J.) ..............................................................7

*Hunt Wesson Foods, Inc. v. Supreme Oil Co.*,
   817 F.2d 75 (9th Cir. 1987) ......................................................................................23

*Lotsoff v. Wells Fargo Bank, N.A.*,
   No. 18-cv-2033, 2019 U.S. Dist. LEXIS 169373 (S.D. Cal. Sept. 30, 2019) ...........13, 15, 19

*McArdle v. AT&T Mobility LLC*,
   772 F. App'x 575 (9th Cir. 2019)......................................................2, 12, 18, 19

*McArdle v. AT&T Mobility LLC*,
   No. 09-cv-01117-CW, 2017 U.S. Dist. LEXIS 162751 (N.D. Cal. Oct. 2,
   2017)..........................................................................................................................18

*McGill v. Citibank, N.A.*,
   393 P.3d 85 (Cal. 2017).............................................................................. *passim*

*Momot v. Mastro*,
   652 F.3d 982 (9th Cir. 2011) ......................................................................................6

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - iii

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

*O'Connor v. Uber Techs., Inc.*,
   311 F.R.D. 547 (N.D. Cal. 2015) ..................................................................20

*Oracle Am., Inc. v. Myriad Grp. A.G.*,
   724 F.3d 1069 (9th Cir. 2013) ........................................................................6

*Rahimi v. Nintendo of Am., Inc.*,
   936 F. Supp. 2d 1141 (N.D. Cal. 2013) .....................................................13, 14

*Rittmann v. Amazon.com, Inc.*,
   383 F. Supp. 3d 1196 (W.D. Wash. 2019) .......................................................8

*Saleemi v. Doctor's Assocs.*,
   176 Wash. 2d 368, 292 P.3d 108 (2013) ..........................................................8

*Scout.Com, LLC v. Bucknuts, LLC*,
   No. C07-1444 RSM, 2007 U.S. Dist. LEXIS 87491 (W.D. Wash. Nov. 16,
   2007) ...............................................................................................................7

*Siggelkow v. Nw. Grp., Inc.*,
   No. 3:18-cv-01494-HZ, 2019 U.S. Dist. LEXIS 10818 (D. Or. Jan. 22, 2019) .....................8

*Stelluti v. Casapenn Enters., LLC*,
   1 A.3d 678 (N.J. 2010) .....................................................................................8

*Tillage v. Comcast Corp.*,
   772 F. App'x 569 (9th Cir. 2019) .......................................................2, 12, 19, 20

*Vasquez v. Libre by Nexus, Inc.*,
   No. 17-cv-00755-CW, 2018 U.S. Dist. LEXIS 214143 (N.D. Cal. Aug. 20,
   2018) ...................................................................................................13, 15, 17

*Zeif v. Cintas Corp. No 2*,
   No. SACV 13-00413 .......................................................................................24

**Statutes**

9 U.S.C. § 3 .........................................................................................................24

California's Song-Beverly Consumer Warranty Act .................................................5

CLRA ................................................................................................... *passim*

Federal Arbitration Act, 9 U.S.C. § 2 .................................................... *passim*

False Advertising Law.....................................................................................10, 11

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - iv

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Unfair Competition Law ..................................................................................... *passim*

**Other Authorities**

California Civil Code ..............................................................................................11

https://www.nintendo.com/switch/choose-your-joy-con-color/ (last visited Nov. 26, 2019) ..........................................................................................................21

Restatement (Second) of Conflict of Laws § 188(2) ...........................................9

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

# I.    INTRODUCTION

This consumer class action concerns a widespread defect in Nintendo's Joy-Con controllers, which are an integral part of its Switch and Switch Lite videogame systems. When this so-called Drift Defect inevitably manifests, it renders the Joy-Con controllers unusable for gameplay, thus defeating the central purpose of the product. As discussed in the First Amended Complaint, Nintendo is and has been well aware of the existence of the Drift Defect, yet declined to disclose this material information to consumers. The Drift Defect has been experienced by many thousands of consumers across the country. Among other remedies to address Nintendo's conduct, Plaintiffs seek monetary damages and a class-wide injunction issued by this Court for the benefit of the public.

Nintendo does not meaningfully dispute Plaintiffs' substantive allegations, seek dismissal of any claims on the merits, argue that it lacked duty to disclose the Drift Defect, or even attempt to characterize the Joy-Cons as being merchantable. Instead, it has sought Court intervention to prevent even preliminary discovery (*see* ECF No. 26) and has filed a motion to compel (ECF No. 24) all eighteen Plaintiffs to arbitrate their claims individually, based upon an End User License Agreement ("EULA").

Nintendo's zealous attempt to have the case summarily sent to arbitration suffers from a fundamental flaw. Under well-established choice of law rules, the Court is to apply the laws of the respective state where each Plaintiff resides, was exposed to the actionable conduct, made the relevant purchase, and was injured. The home-state laws applicable to this action include, among others, California. Significantly, Nintendo's brief completely ignores the California Supreme Court's ruling in *McGill v. Citibank, N.A.*, 393 P.3d 85 (Cal. 2017), which held that an arbitration agreement that purports to prevent California consumers from obtaining public

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - 1

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    injunctive relief in any forum—like Nintendo's—is unenforceable. This rule from *McGill* has

2    recently been endorsed by a trio of Ninth Circuit cases: *Blair v. Rent-A-Center, Inc.*, 928 F.3d

3    819 (9th Cir. 2019); *Tillage v. Comcast Corp.*, 772 F. App'x 569 (9th Cir. 2019); *McArdle v.*

4    *AT&T Mobility LLC*, 772 F. App'x 575 (9th Cir. 2019).

5         Nintendo's brief does not address any of these cases, nor does it explain why Plaintiffs

6    should be precluded from seeking a public injunction in this Court. Because Plaintiffs validly

7    seek public injunctive relief, Nintendo's arbitration clause is unenforceable as to any purported

8    waiver of that relief as to California consumers. And because Nintendo's arbitration provision

9    contains a "poison pill"—which invalidates the entire arbitration agreement if "*any* court"

10   determines that the class action waiver is invalid "*for any reason*"—the entire arbitration

11   agreement is void not just as to any claims that a California plaintiff may bring (including those

12   for monetary damages): it is void as to every consumer from any state who may otherwise be

13   subject to it. The Court should thus deny Nintendo's motion in its entirety.

14        Further, Joy-Cons can be purchased separately from the Nintendo Switch console itself.

15   Those separate purchases are not subject to any contract—let alone an arbitration provision—

16   nor has Nintendo shown that those purchases are subject to the EULA at issue here. Thirteen of

17   the named Plaintiffs in this action—Ariel Enriquez, Zackery Reed, Grant Hoelscher, Michael

18   Oren, Nathan Ainsworth, Jared Thompson, Paul Barr, John Rios, David Guy, Chris Luebcke,

19   Alec Collins, Jason Coffey-Wolfgang, and Lydia DeLoach—purchased Joy-Cons as a separate,

20   stand-alone product from their original Switch. Those individual Joy-Cons did not come with

21   their own EULA, did not incorporate by reference any other EULA, and are not subject to any

22   alleged agreement to arbitrate.

23

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - 2

1    Thus, if Nintendo's motion is not denied in full, the Court should (a) carve out the

2    separate Joy-Con controllers from any mandatory arbitration proceedings, since they are not

3    subject to a valid arbitration agreement and (b) retain jurisdiction over this case to address any

4    subsequent disputes that may arise related to the terms of the EULA.

5                    **II.      FACTUAL AND PROCEDURAL OVERVIEW**

6          **A.      Background**

7          Plaintiffs allege that the Joy-Con controllers in their Nintendo Switch and Switch Lite

8    gaming systems contain a material defect: characters or items on the screen move during

9    gameplay—referred to as "drift" or "drifting"—without user command or manual operation of

10   the joystick ("Drifting" or the "Drift Defect"). First Am. Class Action Compl. ("FAC"), ECF

11   No. 21 ¶¶ 3–6. Though Nintendo was aware of the existence of the Drift Defect, it failed to

12   disclose that Defect to consumers.

13         **B.      The Switch, Switch Lite, and Joy-Cons**

14         The Switch is a console gaming system manufactured, marketed, and sold by Nintendo.

15   *Id.* ¶ 2. Nintendo released the original Switch for purchase in the United States on March 3,

16   2017. *Id.* ¶ 143. Each Switch console comes with two Joy-Cons: controllers that control

17   gameplay on the Switch console. *Id.* ¶ 3. Additional Joy-Cons are available for purchase for

18   $79.99 for a pair, or $49.99 for an individual (i.e., left or right) Joy-Con. *Id.* ¶ 148.

19         The original Switch is a hybrid video game console: gamers can attach the detachable

20   Joy-Cons to the Switch gaming console and play the Switch as a portable handheld gaming

21   system, similar to the popular Game Boy. *Id.* ¶ 143. Alternatively, gamers can dock the Switch

22   in a Switch docking station (connected to a television by an HDMI cable) and play the Switch

23   on a television screen like a traditional gaming console, similar to a PlayStation or Xbox. *Id*.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - 3

1    The detachable Joy-Con controllers consist of a left and right paddle and are wireless. *Id.*

2    ¶ 144. As identified above, they can be connected to the Switch screen for portable handheld

3    play, connected to a traditional gaming controller accessory, or used as two separate controllers

4    for two player gameplay. *Id*. Nintendo also sells several games which can be played by more

5    than two players, thus requiring additional Joy-Cons. Each Joy-Con (left and right) contains a

6    joystick (also known as an analog stick) and an array of buttons used to control gameplay. *Id.*

7    ¶¶ 144–45.

8    Released in September 2019, the Switch Lite is the purely handheld version of the

9    original Switch, and is similar to the Switch except that its Joy-Con controllers are built in and

10   not detachable. *Id.* ¶¶ 6, 151–52. The Switch Lite appears to come equipped with the same

11   joystick hardware and technology as the regular Switch. *Id.* ¶ 6. But unlike the original Switch,

12   there is no ability to remove the Joy-Cons from the Switch Lite console in the event that the

13   Drift Defect manifests—the controllers are built into the gaming system, such that if the Switch

14   Lite joysticks fail, the whole system fails. *Id.* ¶ 155. Like the Switch, the Switch Lite is

15   reportedly plagued by the Drift Defect. *Id.* ¶ 154.

16   **C.      The Drift Defect**

17   The Drift Defect significantly interferes with Switch gameplay and, thus, compromises

18   the Switch and Joy-Con controller's core functionality. *Id.* ¶ 150. Plaintiffs' investigation to

19   date indicates that a principal cause of the Drift Defect is extensive wear on the pad surface on

20   the interior of the Joy-Cons. *Id.* ¶ 160. As steel brushes inside the Joy-Cons move back and

21   forth during Joy-Con use, they rub away a soft carbon material that makes up the pad. *Id*. As

22   this material is removed and compromised, the Joy-Cons experience a change in the electrical

23   resistance of the pads, which may result in drifting. *Id*. Regular use and normal motion of the

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - 4

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1  Joy-Cons also causes particles to accumulate on the interior of the Joy-Cons, causing abrasions

2  and wear that may also lead to drifting. *Id.*

3        Plaintiffs allege that Nintendo knew about the Drift Defect, yet decided to continue to

4  sell defective products to consumers. It even equipped the newer Switch Lites with the

5  defective Joy-Cons without first fixing the Defect that plagued the original Switch. *Id.* ¶ 156.

6  As a result of these alleged unfair, deceptive, and/or fraudulent business practices, Plaintiffs

7  have alleged that they and other owners of Switches and Joy-Con controllers have suffered an

8  ascertainable loss and injury in fact, and that they have otherwise been harmed by Nintendo's

9  conduct. *Id.* ¶ 7. Plaintiffs seek redress for these injuries and the injuries to the class as a result

10  of Nintendo's violations of numerous state consumer fraud statutes, breaches of express and

11  implied warranty, unjust enrichment, and violations of California's Song-Beverly Consumer

12  Warranty Act. Plaintiffs seek monetary relief for damages suffered, declaratory relief as to the

13  parties' rights under Nintendo's warranty, and public injunctive relief. *Id.* ¶ 8.

14      **D.**    **Plaintiffs Purchased Defective Switches and Defective Additional Joy-Cons**

15        Each Plaintiff purchased a regular Switch console that included Joy-Con controllers.

16  ¶¶ 13, 21, 31, 40, 47, 54, 60, 67, 73, 79, 85, 94, 101, 107, 113, 119, 128, 136. Additionally,

17  Plaintiffs Diaz, Enriquez, Barr, Rios, Guy, Luebcke, Collins, Reed, Hoelscher, Oren,

18  Ainsworth, Coffey-Wolfgang, and DeLoach each purchased one or more additional (separate)

19  sets of Joy-Cons. ¶¶ 13, 31, 43, 50, 57, 70, 88, 95, 101, 107, 114, 122, 139. Plaintiffs alleges

20  that their Switch Joy-Cons and/or the additional Joy-Cons they purchased experienced the Drift

21  Defect. ¶¶ 14, 22, 32, 41, 48, 55, 61, 68, 74, 80, 87, 96, 102, 108, 115, 120, 129, 137.

22        As laid out in Nintendo's Motion, the EULA at issue here appears on the screen of the

23  Switch "[w]he a purchaser powers on the console for the first time to set up their new Switch."

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - 5

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1     *See* Kiel Decl., ECF No. 25 at 2. But notably, none of the separately-purchased additional

2     Joy-Cons were accompanied by Nintendo's EULA. Nor did the packaging for the separate

3     Joy-Cons incorporate any arbitration provision in a user manual or on the product packaging.

4     ### III.    LEGAL STANDARD

5           The Federal Arbitration Act ("FAA"), 9 U.S.C. § 2, governs arbitration agreements in

6     any contract affecting interstate commerce. *Harbers v. Eddie Bauer, LLC*, No. C19-1012JLR,

7     2019 U.S. Dist. LEXIS 200703, at *8 (W.D. Wash. Nov. 19, 2019) (citation omitted). The

8     Court's role under the FAA is limited to determining two "gateway" questions of arbitrability:

9     (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement

10     encompasses the dispute at issue. *Big Picture Grp. LLC v. Pate*, No. CV 14-00569 DMG

11     (SHx), 2014 U.S. Dist. LEXIS 199013, at *8–*9 (C.D. Cal. June 17, 2014) (citing *Momot v.*

12     *Mastro*, 652 F.3d 982, 987 (9th Cir. 2011)). "[T]here is a presumption that courts will decide

13     which issues are arbitrable; the federal policy in favor of arbitration does not extend to deciding

14     questions of arbitrability." *Oracle Am., Inc. v. Myriad Grp. A.G.*, 724 F.3d 1069, 1072 (9th Cir.

15     2013). The court must apply a "rigorous standard" to ascertain whether the parties agreed to

16     arbitrate particular questions. *Big Picture Grp. LLC*, 2014 U.S. Dist. LEXIS 199013, at *9

17     (citation omitted). Courts "should not assume that the parties agreed to arbitrate arbitrability

18     unless there is clear and unmistakable evidence that they did so." *Momot*, 652 F.3d at 987

19     (internal quotations omitted).[1]

20

21            [1] Nintendo devotes nearly two pages to arguing that the parties agreed to delegate the
issue of arbitrability to an arbitrator. Def.'s Mot. to Compel Arbitration and Dismiss, ECF No.
24 at 13–15. But as set forth below, the arbitration agreement is invalid. If the Court agrees that

22     the arbitration agreement is invalid, the issue of arbitrability is moot, and the delegation clause
is not triggered. This Court must first decide the threshold (contract formation) issue of whether

23     Plaintiffs' claims are subject to a valid arbitration agreement. *See Granite Rock Co. v. Int'l
Bhd. Of Teamsters*, 561 U.S. 287, 299–300 (2014) (explaining that a court must not order

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - 6

1    Arbitration is a "matter of contract and a party cannot be required to submit to

2    arbitration any dispute which he has not agreed so to submit." *Scout.Com, LLC v. Bucknuts,*

3    *LLC*, No. C07-1444 RSM, 2007 U.S. Dist. LEXIS 87491, at *11–12 (W.D. Wash. Nov. 16,

4    2007) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582

5    (1960)); *see also Howard v. Ferrellgas Partners, L.P.*, 748 F.3d 975, 977 (10th Cir. 2014)

6    (Gorsuch, J.) (" . . . [E]ven under the FAA it remains a 'fundamental principle' that 'arbitration

7    is a matter of contract,' not something to be foisted on the parties at all costs") (internal

8    citations omitted). When deciding whether the parties agreed to arbitrate a certain matter,

9    including the issue of arbitrability, courts apply "ordinary state-law principles that govern the

10   formation of contracts." *Abdalla v. Sec. Indus. Specialists, Inc.*, No. C13-1674RAJ, 2014 U.S.

11   Dist. LEXIS 39553, at *3–4 (W.D. Wash. Mar. 24, 2014) (quoting *First Options of Chicago,*

12   *Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)).

13              **IV.    ARGUMENT**

14   **A.    Washington choice of law principles require the court to apply the law of
         Plaintiffs' home states' in the contract interpretation analysis.**

15        There is no choice of law provision in the EULA that is applicable to its arbitration

16   provision. A threshold question for the Court to decide is thus which state(s)' law applies to

17   Plaintiffs' challenges to the EULA.[2] The FAA provides that states may apply generally-accepted

18   contract principles in determining the enforceability of arbitration clauses, so long as the principle

19   or law applied does not apply only to arbitrations or derive their meaning from the fact that an

20

21   _____

22   arbitration under circumstances where the "formation of the parties' arbitration agreement . . .
     is in issue.").

23        [2] Nintendo's brief discusses choice of law only in the context of clickwrap and
     clickthrough agreements. *See* ECF No. 24 at 8. It does not address choice of law in the context
     of contract formation issues.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - 7

1    agreement to arbitrate is at issue. *Saleemi v. Doctor's Assocs.*, 176 Wash. 2d 368, 376, 292 P.3d

2    108, 112 (2013).

3         This Court, sitting in diversity, applies Washington's choice-of-law principles. *Carideo*

4    *v. Dell, Inc.*, 706 F. Supp. 2d 1122, 1126 (W.D. Wash. 2010). The first inquiry is whether there

5    is an actual conflict between the laws or interests of Washington and the laws or interests of

6    another state. *Id.* Absent an actual conflict, Washington law applies. *Id.* If a conflict does exist,

7    and the parties did not previously select the law to govern the issue, the court will determine the

8    controlling law under the "most significant relationship" test. *Id.* Normally, "[t]o evaluate the

9    validity of an arbitration agreement, federal courts should apply ordinary state-law principles that

10   govern the formation of contracts." *Rittmann v. Amazon.com, Inc.*, 383 F. Supp. 3d 1196, 1202

11   (W.D. Wash. 2019).

12        Here, there are differences between Washington law and the laws of Plaintiffs' states of

13   residence when it comes to contract formation and the requirements for voiding a contract as

14   unconscionable.[3] Given that a true conflict exists among Washington and the laws of the various

15

16        [3] *Compare, e.g.*, *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339–40 (2011)
     (California law; substantive and procedural element must both be satisfied for a finding of
17   unconscionability); *Blue Cross Blue Shield of Ala. v. Rigas*, 923 So. 2d 1077, 1087 (Ala. 2005)
     (Alabama law; same); *Bekele v. Lyft, Inc.*, 199 F. Supp. 3d 284, 299 (D. Mass. 2016)
18   (Massachusetts law; same), *with Al-Safin v. Circuit City Stores, Inc.*, 394 F.3d 1254, 1259 (9th
     Cir. 2005) (noting that the Washington Supreme Court has declined to resolve whether
19   procedural unconscionability, standing alone, is sufficient); *Stelluti v. Casapenn Enters., LLC*, 1
     A.3d 678, 687, n.10 (N.J. 2010) (expressing a measure of uncertainty regarding
20   unconscionability requirements and stating that "a high level of procedural unconscionability
     alone *may* not render an entire agreement unenforceable") (emphasis added); *Siggelkow v. Nw.*
21   *Grp., Inc.*, No. 3:18-cv-01494-HZ, 2019 U.S. Dist. LEXIS 10818, at *20 (D. Or. Jan. 22, 2019)
     ("Oregon law . . . requires *only* substantive unconscionability to invalidate a contract.")
22   (emphasis added); *Davis v. Fenton*, 26 F. Supp. 3d 727, 737 (N.D. Ill. 2014) (applying Illinois
     law and stating "[a] finding of unconscionability may be based on either procedural or substantive
23   unconscionability, or a combination of both.").

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - 8

**Tousley Brain Stephens PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Plaintiff states, the Court cannot apply one uniform law to interpretation of the validity of the arbitration provision in the EULA.

Because there is an actual conflict between the state laws that might apply to this action, Washington law does not presumptively apply; instead, the Court must determine which law controls under the "most significant relationship" test. *Carideo*, 706 F. Supp. 2d at 1126. Courts in Washington follow the Restatement (Second) Conflict of Laws (1971) section 188 for contract claims, which considers: "(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of the subject matter of the contract, and (e) the domicil[e], residence, nationality, place of incorporation and place of business of the parties." Restatement (Second) of Conflict of Laws § 188(2); *Carideo*, 706 F. Supp. 2d at 1126. Here, Plaintiffs purchased their Nintendo Switch consoles in their states of residence, which is where they "entered" into their "contracts" with Nintendo; none of the Plaintiffs had an opportunity to negotiate the contract with Nintendo; the contract was presumably to be performed by the Plaintiffs in their home states, i.e., where they reside with (and paid for) their Nintendo Switch consoles, which form the subject matter of the contract; Plaintiffs were injured in these states; and Plaintiffs are domiciled and/or reside in each of their resident states as pleaded in the Complaint. *See* FAC ¶¶ 12–141. As such, on balance, each state has a significant relationship to its resident Plaintiffs such that it has a substantial interest in applying each Plaintiffs' resident state laws to the contract analysis.

Further, courts in Washington assume "that state consumer protection law, whether in the form of consumer protection statutes or consumer-centered applications of state common law, are intended to protect *the state's* consumers." *Detweiler v. T-Mobile USA, Inc.*, No. C07-2090RAJ, 2008 U.S. Dist. LEXIS 106927, at *14 (W.D. Wash. May 2, 2008) (emphasis in

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - 9

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    original). To that effect, "[t]he Ninth Circuit has held that each class member's consumer

2    protection claim should be governed by the consumer protection laws of the jurisdiction in which

3    the transaction took place." *Hanson v. MGM Resorts Int'l*, No. C16-1661-RAJ, 2017 U.S. Dist.

4    LEXIS 113690, at *5 (W.D. Wash. July 20, 2017) (citing *Mazza v. Am. Honda Motor Co.*, 666

5    F.3d 581, 594 (9th Cir. 2012)). Accordingly, the Plaintiffs' state consumer protection claims are

6    governed by the state laws in which the Plaintiffs reside, i.e. where the transactions of their

7    Nintendo Switch purchases took place. *See* ¶¶ 12–141.

8        **B.**     **The arbitration provision is invalid as to Plaintiffs' California statutory claims
9                    for all consumers because it purports to prohibit public injunctive relief in any
                    forum.**

10           Following the California Supreme Court's ruling in *McGill v. Citibank, N.A.*, 393 P.3d

11   85 (Cal. 2017), courts in the Ninth Circuit routinely hold that arbitration provisions—such as the

12   EULA in this case—are void as against public policy under California law because they purport

13   to waive a plaintiff's right to seek public injunctive relief in any forum. Public injunctive relief

14   "has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the

15   general public." *McGill*, 393 P.3d at 87.

16           In *McGill*, the California Supreme Court was asked to determine the validity of a

17   provision in an arbitration agreement waiving the right of individuals to seek, in any forum, the

18   public injunctive relief afforded plaintiffs under the Unfair Competition Law ("UCL"),

19   Consumer Legal Remedies Act ("CLRA"), and False Advertising Law ("FAL"). The plaintiff

20   had filed a class action lawsuit against her credit card issuer, Citibank. *Id.* at 88. The Citibank

21   credit card agreement at issue provided, however, that all claims relating to the parties'

22   relationship were subject to arbitration, "including Claims regarding the application,

23   enforceability, or interpretation of this Agreement and this arbitration provision." *Id.* Further, it

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - 10

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1   required that any claims "must be brought in the name of an individual person or entity and must

2   proceed on an individual (non-class, non-representative) basis" and the arbitrator would "not

3   award relief for or against anyone who is not a party." *Id*. Because the plaintiff in *McGill* had not

4   opted out of the arbitration provision in her credit card agreement, Citibank moved to have the

5   plaintiff arbitrate her claims on an individual basis. *Id.* Plaintiff responded that the arbitration

6   agreement was unenforceable under established California law. *Id.*

7       In reviewing the enforceability of the arbitration clause, the *McGill* court recognized that

8   the CLRA, UCL, and FAL all expressly grant consumers the right to seek an injunction (in any

9   forum) to protect themselves and other similarly situated from unfair business practices. *Id.* at

10  89. It further observed that the California Civil Code provides that "a law established for a public

11  reason cannot be contravened by a private agreement." *Id.* at 93 (citing Cal. Civ. Code § 3513).

12  Applying these laws, the *McGill* Court reasoned that pre-dispute waivers of the public injunctive

13  relief available under these statutes "would seriously compromise the public purposes the statues

14  were intended to serve." *Id.* at 94. It concluded that these waivers are thus "invalid and

15  unenforceable under California law." *Id.*

16      In reaching its conclusion, the court also rejected Citibank's argument that the FAA

17  preempted the state court from enforcing such a waiver, finding that "the FAA does not require

18  enforcement of a provision in a pre-dispute arbitration agreement that, in violation of generally

19  applicable California contract law, waives the right to seek *in any forum* public injunctive relief

20  under the UCL, the CLRA, or the false advertising law." *Id.* at 95 (emphasis original).

21      Courts across the country have since applied *McGill* to invalidate public injunctive relief

22  waivers in consumer arbitration agreements. Recently, the Ninth Circuit affirmed the holding in

23  *McGill* in three opinions, each dealing with the enforceability of an arbitration clause in actions,

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - 11

1   like this one, that sought public injunctive relief. *See Blair v. Rent-A-Center, Inc.*, 928 F.3d 819

2   (9th Cir. 2019); *Tillage v. Comcast Corp.*, 772 F. App'x 569 (9th Cir. 2019); *McArdle v. AT&T*

3   *Mobility LLC*, 772 F. App'x 575 (9th Cir. 2019). In *Blair*, the Ninth Circuit was asked to decide

4   whether the FAA preempts California's *McGill* rule. The court held that it does not. *Blair*, 928

5   F.3d at 830–31 ("[T]he FAA does not preempt the *McGill* rule."). The relevant portions of the

6   arbitration agreement at issue stated that "any dispute or claim" between Rent-A-Center and

7   plaintiffs was to be "resolved by binding arbitration," which was to "be conducted on an

8   individual basis" and would not affect "accountholders other than [plaintiffs]." *Blair*, 928 F.3d

9   at 823. The Ninth Circuit agreed that the agreement was invalid because it violates the *McGill*

10   rule insofar as it purported to constitute a waiver of Blair's right to seek public injunctive relief

11   in any forum. *Id.* at 831.

12       The Ninth Circuit relied on its opinion in *Blair* in upholding the *McGill* rule in *McArdle*,

13   as well. *See McArdle*, 772 F. App'x at 575. And in *Tillage*, the Ninth Circuit likewise upheld a

14   district court's order denying Comcast's motion to compel arbitration based on its opinion in

15   *Blair*. There, the Ninth Circuit found the arbitration agreement between Comcast and plaintiffs

16   null and void in its entirety because the agreement itself provided that its class action waiver was

17   "an essential part of this arbitration provision and cannot be severed from it." *Tillage*, 772 F.

18   App'x 569. The Ninth Circuit further rejected Comcast's argument that the opt-out clause of its

19   subscriber agreement removed it from *McGill*'s coverage; specifically, Comcast argued that

20   because its subscriber agreement purportedly waived a person's right to pursue a public

21   injunction only if he or she agreed to arbitrate, it was a valid waiver. *Id.* That argument failed,

22   because "*McGill* applies to any consensual waiver of public injunctive relief, irrespective of how

23   the parties choose to waive that relief." *Id.*

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - 12

1   Recent cases applying California law continue to follow in these footsteps. *See, e.g.*, *Eiess*

2   *v. USAA Fed. Sav. Bank*, No. 19-cv-00108-EMC, 2019 U.S. Dist. LEXIS 144026, at *6–*7 (N.D.

3   Cal. Aug. 23, 2019) (because the arbitration clause at issue required covered claims to be

4   arbitrated rather than litigated, and then barred an arbitrator from awarding public injunctive

5   relief, the court found that the "clause effectively provides that a USAA customer waives the

6   ability to seek public injunctive relief in any forum, whether judicial or arbitral" and was,

7   therefore, unenforceable under *McGill*); *Lotsoff v. Wells Fargo Bank, N.A.*, No. 18-cv-2033, 2019

8   U.S. Dist. LEXIS 169373, at *13–*14 (S.D. Cal. Sept. 30, 2019) (finding the arbitration

9   agreement unenforceable under *McGill* where it stated that "neither Wells Fargo nor you will be

10  entitled to join or consolidate disputes by or against others as a representative or member of a

11  class, to act in any arbitration in the interests of the general public"); *Delisle v. Speedy Cash*, No.

12  18-cv-2042, 2019 U.S. Dist. LEXIS 172276, at *9–*10 (S.D. Cal. Oct. 3, 2019) (finding that

13  defendant was unlikely to win its appeal on its motion to compel arbitration because plaintiffs

14  sought public injunctive relief); *Dornaus v. Best Buy Co., Inc.,* No. 18-cv-04085, 2019 U.S. Dist.

15  LEXIS 24522, at *8 (N.D. Cal. Feb. 14, 2019) (finding that contracts that prevent all adjudication

16  of public injunctive relief—in any forum—are impermissible under California law, which

17  "includes contracts that compel all claims to arbitration, yet allow only pursuit of individual relief

18  (solely on behalf of oneself) in that forum"); *Vasquez v. Libre by Nexus, Inc.*, No. 17-cv-00755-

19  CW, 2018 U.S. Dist. LEXIS 214143, at *14–*15 (N.D. Cal. Aug. 20, 2018) (holding arbitration

20  agreement invalid because it purported to waive the plaintiff's right to request public injunctive

21  relief).

22  Nintendo argues that *Rahimi v. Nintendo of Am., Inc.*, 936 F. Supp. 2d 1141 (N.D. Cal.

23  2013) seals the fate of the motion to compel arbitration in this action. ECF No. 24 at 11. Not so.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - 13

In relying on *Rahimi*, Nintendo overlooks the overwhelming majority of subsequent case law out of the Ninth Circuit holding arbitration provisions—such as the EULA—void as against public policy according to the California Supreme Court's ruling in *McGill*, because the public injunctive waiver in the EULA prevents a party from seeking public injunctive relief in any forum. Nintendo's failure to acknowledge Plaintiffs' claims for public injunctive relief is telling. *Rahimi* predates *McGill* and its progeny, and therefore is not dispositive for cases, such as this one, where Plaintiffs seek public injunctive relief.

> **i.    Plaintiffs Diaz and Luebcke seek public injunctive relief on behalf of the California Subclass.**

As set forth in *McGill*, "public injunctive relief under the UCL [and] the CLRA . . . is relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public." 393 P.3d at 90 (quotations omitted); *see also Blair,* 928 F.3d at 824 ("[P]ublic injunctions benefit 'the public directly by the elimination of deceptive practices,' but do not otherwise benefit the plaintiff, who 'has already been injured, allegedly, by such practices and [is] aware of them.'" (quoting *McGill*, 393 at 90)). Plaintiffs seek such public injunctive relief on behalf of the California Subclass.

Specifically, the Amended Complaint details Nintendo's ongoing deception, which is harming the general public: "[d]espite knowing about the Joy-Con defect, Nintendo continues to market and sell the Switch and Joy-Con controllers (through third-party retailers) without disclosing the defect." ECF No. 21 at ¶ 171; *see also* ECF No. 21 at ¶¶ 175, 214, 230. Further, Plaintiffs specifically plead that the injunctive relief they seek "by and large would benefit the general public here. Injunctive relief benefits Plaintiff only incidentally as members of the general public, because Plaintiff has already been injured and is therefore aware of the alleged misconduct of Nintendo." *Id.* ¶ 221. Plaintiffs explicitly seek "monetary relief for damages

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - 14

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

1    suffered, declaratory relief as to the parties' rights under Nintendo's warranty, and public

2    injunctive relief," *id.* ¶ 8, and the Prayer for Relief requests an order "temporarily and

3    permanently enjoining Nintendo from continuing the unlawful, deceptive, fraudulent, and unfair

4    business practices alleged in this Complaint."

5         Plaintiffs Diaz and Luebcke assert claims under the CLRA and the UCL, which provide

6    for public injunctive relief. *McGill*, 393 P.3d at 87; ECF No. 21 at ¶¶ 211–35. Accordingly, the

7    claims at issue here seek public injunctive relief and fall under the scope of *McGill*. *See, e.g.*,

8    *Eiess*, 2019 U.S. Dist. LEXIS 144026, at *6–7 (finding plaintiff sought public injunctive relief

9    where the relief sought "transcends [plaintiff's] personal situation and relief" in that she "asked

10   the court to enjoin USAA from future violations of California consumer protection statutes by

11   forcing USAA to amend its Deposit Agreement (which is available to the public to review) to

12   better reflect its actual practices of charging multiple [non-sufficient funds] fees"); *Vasquez,* 2018

13   U.S. Dist. LEXIS 214143, at *15–16 (finding plaintiffs' requested relief fell squarely into the

14   definition of public injunctive relief provided by *McGill* where the proposed injunction would

15   not benefit the named plaintiffs directly "because the plaintiff has already been injured, allegedly,

16   by such practices and is aware of them" but rather will "benefit members of the public who are

17   exposed to LBN's false and deceptive business practices"); *Lotsoff*, 2019 U.S. Dist. LEXIS

18   169373, at *13–14 (concluding that the arbitration agreement barred public injunctive relief

19   where it stated that the consumer or Wells Fargo was allowed to "submit a dispute to binding

20   arbitration at any time, regardless of whether a lawsuit or other proceeding has previously

21   begun," but "neither Wells Fargo nor you will be entitled to join or consolidate disputes by or

22   against others as a representative or member of a class, to act in any arbitration in the interests of

23   the general public").

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - 15

**ii.    The EULA's individual arbitration agreement and class action waiver is invalid as to California consumers because it purports to preclude California consumers from pursuing public injunctive relief in any forum.**

Nintendo's EULA attempts to preclude Nintendo's consumers from pursuing public injunctive relief in any forum. The waiver reads, in relevant part:

**7. Dispute Resolution; Binding Individual Arbitration; Class Action Waiver.**

> A. … Any matter we are unable to resolve and all disputes or claims arising out of or relating to this Agreement, including its formation, enforceability, performance, or breach (each, a "Claim"), with the exception of the matters described in section 7(C) below, shall be finally settled by binding arbitration administered by the American Arbitration Association in accordance with the provisions of its Commercial Arbitration Rules and the supplementary procedures for consumer-related disputes of the American Arbitration Association (the "AAA"), excluding any rules or procedures governing or permitting class actions. **The arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve all Claims**. The arbitrator shall be empowered to grant whatever relief would be available in a court under law or in equity. **The arbitrator's award shall be binding on the parties** and may be entered as a judgment in any court of competent jurisdiction. The parties understand that, absent this mandatory provision, they would have the right to sue in court and have a jury trial. They further understand that, in some instances, the costs of arbitration could exceed the costs of litigation and the right to discovery may be more limited in arbitration than in court. **Any such arbitration shall be conducted by the parties in their individual capacities only and not as a class action or other representative action, and the parties waive their right to file a class action or seek relief on a class basis**. If any court or arbitrator determines that the class-action waiver set forth in the preceding sentence is void or unenforceable for any reason or that an arbitration can proceed on a class basis, then the arbitration provision set forth in this Section 7 shall be deemed null and void in its entirety and the parties shall be deemed to have not agreed to arbitrate Claims.

Kiel Decl., ECF No. 25 at Ex. A ("EULA") (emphasis added).

In contravention of *McGill*'s prohibition against the waiver of the right to seek public injunctive relief in any forum, Section 7 of the EULA purports to waive the right to seek such public injunctive relief by further requiring that "[a]ny such arbitration shall be conducted by the

parties in their *individual capacities only* and not as a class action or other representative action, and the parties *waive their right to file a class action or seek relief on a class basis*." *Id.* (emphasis added). This language bars the arbitrator from granting the type of broadly-applicable injunctive relief that would benefit the public at large, and which the CLRA and UCL otherwise authorize. This provision is materially indistinguishable from the provisions at issue in *McGill*, *Blair*, *Vasquez*, and *Dornaus*. *See McGill*, 393 P.3d at 87–88 (arbitration agreement purported to bar arbitrator from awarding relief for any non-party or on a non-individual basis); *Blair*, 928 F.3d at 823 ("any dispute or claim" between Rent-A-Center and plaintiffs was to be "resolved by binding arbitration" which was to "be conducted on an individual basis" and would not affect "accountholders other than [plaintiffs]"); *Vasquez*, 2018 U.S. Dist. LEXIS 214143, at *14–*15 (arbitration clause required individual arbitration of all claims, so long as a party requested it, and further stated that any right to arbitrate a class action was "expressly waived"); *Dornaus*, 2019 U.S. Dist. LEXIS 24522, at *8 (contract that compelled all claims to arbitration, yet allowed pursuit only of individual relief (solely on behalf of oneself) in that forum, was void).

Moreover, the broad scope of the EULA's arbitration clause—which purports to require the parties to arbitrate "all disputes or claims arising out of or relating to this Agreement" — means that Plaintiffs cannot litigate claims for public injunctive relief in court, either. That is, because the EULA does not provide a separate carve-out allowing a plaintiff to public injunctive relief on a representative basis, Nintendo's EULA, through its purported class waiver, purportedly bars Plaintiffs from seeking public injunctive relief in any forum. This is not, in other words, an arbitration provision that requires a plaintiff to arbitrate individual claims while permitting him to seek public injunctive relief in court.  A contract that compels all claims to arbitration yet allows only the pursuit of individual relief (solely on behalf of the plaintiff) in that

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION AND DISMISS - 17

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

forum thus prevents adjudication of public injunctive relief and is invalid under *McGill*. *See*

*Dornaus*, 2019 U.S. Dist. LEXIS 24522, at *8 (finding that contracts that prevent all adjudication

of public injunctive relief—in any forum—are impermissible under California law, which

"includes contracts that compel all claims to arbitration, yet allow only pursuit of individual relief

(solely on behalf of oneself) in that forum"). Notably, in *McArdle*, as here, the provision at issue

similarly contained a clause that the arbitrator could award the same remedies to individual

customers (including punitive damages and injunction) that a court could award. *See McArdle v.*

*AT&T Mobility LLC,* No. 09-cv-01117-CW, 2017 U.S. Dist. LEXIS 162751 (N.D. Cal. Oct. 2,

2017).  That did not factor into the lower court's analysis in invalidating the provision under

*McGill*—and as affirmed by the Ninth Circuit—nor should it affect this Court's conclusion that

Nintendo's arbitration provision is invalid as precluding public injunctive relief contrary to

California law. *Id.*

      **iii.**     **Because the public injunctive relief waiver is invalid, the entire arbitration agreement is unenforceable as to California residents because of the agreement's non-severability clause.**

Nintendo's arbitration provision contains a "poison pill." It provides that if *any court*

finds the class-action waiver is void or unenforceable *for any reason*, then the entirety of the

arbitration agreement is invalid. Specifically, the EULA states in relevant part:

> If any court or arbitrator determines that the class-action waiver set forth in the preceding sentence is void or unenforceable for any reason or that an arbitration can proceed on a class basis, then the arbitration provision set forth in this Section 7 shall be deemed null and void in its entirety and the parties shall be deemed to have not agreed to arbitrate Claims.

EULA § 7(A). This poison pill non-severability clause nullifies and voids the arbitration

agreement in the event that the class action waiver is unenforceable. Because the class action

waiver acts as a bar to public injunctive relief in any forum, it is invalid under *McGill*—and this

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - 18

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

Court's finding that the waiver of public injunctive relief is unlawful under *McGill* triggers a concomitant obligation on the part of the Court to dissolve the entirety of the arbitration provision.

The Ninth Circuit construed a similar poison pill provision and annulled the entire arbitration agreement in *Tillage*, where the arbitration provision provided that the "WAIVER OF CLASS ACTIONS AND COLLECTIVE RELIEF IS AN ESSENTIAL PART OF THIS ARBITRATION PROVISION AND CANNOT BE SEVERED FROM IT." *Tillage*, 772 F. App'x at 569. It extended the same logic to the arbitration provision in *McArdle*. 772 F. App'x at 575 (finding the entire arbitration agreement void where its non-severability clause provided that: "If this specific provision is found to be unenforceable, then the entirety of this arbitration provision shall be null and void"). *See also Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1098 (9th Cir. 2009) ("[I]n the present case the arbitration agreement itself includes a provision prohibiting severance of the class action waiver. Therefore, in accordance with its severability clause, the arbitration agreement as a whole is unenforceable"); *Lotsoff v. Wells Fargo Bank, N.A.*, No. 18-cv-2033, 2019 U.S. Dist. LEXIS 169373, at *13–*14 (S.D. Cal. Sept. 30, 2019) (arbitration agreement contained a "poison pill" that invalidated the entire arbitration agreement if any provision relating to a class action was found to be unenforceable). Thus, Nintendo's arbitration agreement's poison pill, in conjunction with *McGill*, voids the arbitration agreement in its entirety.

    **iv.**   **The language of Nintendo's poison pill invalidates the arbitration agreement as to *all* consumers.**

Each EULA is an individual contract with an individual consumer. But Nintendo's poison pill does not limit itself to *individual* findings of invalidity. Instead, it expressly contemplates findings of invalidity in *any* court (or by any arbitrator)—not just one that may be overseeing a

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

dispute between the individual parties. It also contemplates what happens when *any* court finds the class action waiver invalid for *any reason*: "the arbitration provision set forth in this Section 7 shall be deemed null and void in its entirety."

The class action waiver is invalid as to California residents under *McGill*. The Court is thus being asked to make a finding of invalidity. *This* Court, in other words, is being asked to find that the class action waiver is invalid for a particular *reason*: that it cannot be applied to California consumers because it is an invalid waiver of public injunctive relief under *McGill*. That finding falls under the plain language of the poison pill, and—under that poison pill's plain language—comes with a particular result: the arbitration agreement is null and void "in its entirety" as to all consumers, not just as to residents of California.

## v.     The EULA's opt-out provision does not save it from a finding of invalidity.

Nintendo repeatedly defends its arbitration provision by arguing that consumers had, for a limited period, the right to opt out of arbitration with no adverse impact. ECF No. 24 at 4–5, 10–11. But the existence of an opt-out provision is irrelevant when a contract is challenged as contrary to public policy. *See, e.g.*, *McGill*, 393 P.3d at 88 (the fact that McGill did not opt-out of the arbitration provisions and continued to use her credit card did not alter the analysis); *Tillage v. Comcast Corp.*, 772 F. App'x 569, 569 (9th Cir. 2019) (rejecting Comcast's argument that the opt-out clause of their subscriber agreement removes it from *McGill*'s coverage and concluding "[t]hat argument fails, as *McGill* applies to any consensual waiver of public injunctive relief, irrespective of how the parties choose to waive that relief"); *Hodges v. Comcast Cable Commc'ns, LLC*, No. 18-cv-01829-HSG, 2019 U.S. Dist. LEXIS 120205, at *3 (N.D. Cal. July 18, 2019) (following *Tillage* and finding that an opt-out clause did not preclude application of *McGill*); *O'Connor v. Uber Techs., Inc.*, 311 F.R.D. 547, 562 (N.D. Cal. 2015) ("Absent

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - 20

**TOUSLEY BRAIN STEPHENS PLLC**
1700 Seventh Avenue, Suite 2200
Seattle, Washington 98101
TEL. 206.682.5600 • FAX 206.682.2992

California authority to the contrary, the Court concludes that the PAGA waiver is an unenforceable pre-dispute waiver despite the opt-out provision."). Accordingly, the existence of an arbitration opt-out right is irrelevant and does not prevent the provision from being void as against public policy.

**C.    There is no arbitration clause that applies to separately purchased Joy-Cons, so claims relating to these Joy-Cons cannot be compelled to arbitration.**

In addition to, and independent of the arguments above, there is no arbitration clause applicable to Joy-Cons purchased separately from the Switch console. Even if some or all claims relating to the purchase of Switch consoles are compelled to arbitration, this Court should retain jurisdiction of claims relating to separately purchased Joy-Cons.

Extra Joy-Cons are a separate product and a separate purchase from a Switch console. Switch owners frequently buy extra Joy-Cons for any number of reasons. For example, many users collect different colors. Likewise, some Switch games can be played by more than two players at a time, requiring additional Joy-Cons since only two come with a Switch console. Nintendo intentionally markets separate Joy-Cons to entice Switch owners to buy additional Joy-Cons. For example, Nintendo recently unveiled several new colors,[4] which can be purchased only as standalone Joy-Cons. One cannot purchase a Switch that comes with, for example, a purple and an orange Joy-Con. Many of the Plaintiffs purchased additional Joy-Cons even prior to experiencing the drift defect. ECF No. 21 ¶¶ 2, 31, 95, 101, 107, 114. Most Plaintiffs eventually purchased extra Joy-Cons. *Id.* ¶¶ 27, 43, 50, 57, 70, 88, 122, 139. Even Nintendo acknowledges in its brief that "[c]onsumers can also buy extra Joy-Con controllers either individually or as a set of two." ECF No. 24 at 7.

---

[4] https://www.nintendo.com/switch/choose-your-joy-con-color/ (last visited Nov. 26, 2019).

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - 21

Users of a Switch console find out about and must agree to the arbitration clause through the EULA on the screen of their Switch when they power it on for the first time. The packaging of a Switch console also refers to this agreement. Extra Joy-Cons, which are a separate purchase, contain neither of these things. There is no EULA (or even a screen) on a Joy-Con, nor does the packaging of extra Joy-Cons contain any reference to a EULA or an arbitration clause. Nintendo knows how to reference a EULA on product packaging; it did so on the Switch box. Nintendo could have easily disclosed on the extra Joy-Con boxes that a EULA applied. It did not. Therefore, there is no arbitration clause that covers these purchases and claims relating to defects in standalone Joy-Cons cannot be compelled to arbitration.

And there is no basis for applying the arbitration clause users supposedly agree to on the Switch console to separate purchases of standalone Joy-Cons. It was Nintendo's burden. as part of its original Motion to Compel Arbitration, to demonstrate to the Court that the arbitration provision was applicable to all product claims it seeks to send to arbitration—but it has completely failed to explain how the EULA its Motion so heavily relies on is applicable to individual Joy-Con purchases. Individual Joy-Cons are a separate product, a separate transaction, and a separate purchasing decision for a consumer. A consumer going through the EULA on his or her new Switch may not decide to purchase additional Joy-Cons for months or even years.

The language of the agreement that applies to Switch consoles is at best ambiguous on this point. The EULA states that it applies to "THIS NINTENDO VIDEO GAME CONSOLE" and later "its accessories." ECF No. 25 at 6 (EULA). The agreement does not define the terms "console" or "accessories," let alone clarify what counts as "its" accessories. For that reason, If the Joy-Cons are part of "THIS" console, then Joy-Cons purchased separately are a separate

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - 22

1  console that carries no arbitration clause. If the Joy-Cons in the box are accessories, then

2  Nintendo's only possible argument for applying the Switch EULA to extra Joy-Cons is that *any*

3  item *ever* used with that console counts as "its accessories," even if purchased separately and

4  years later. That argument would require a tortured reading of the words "this" and "its." Plain

5  reading of "this console" and "its accessories" suggests it applies to accessories that have some

6  connection to that specific console. If anything, that means the accessories that come in the box

7  with the console.[5] At a minimum, it is ambiguous.

8       If Nintendo intended its EULA to cover all other Nintendo products a Switch owner

9  might ever buy, it could have expressly written it to do so. It could even have written into its

10  EULA that the EULA specifically covered "Joy-Cons." Again, it did neither. It is a basic

11  principle of contract law that ambiguity of a contract is construed against the drafter. *See, e.g.*,

12  *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 78 (9th Cir. 1987) ("Another

13  fundamental rule of contract interpretation is that where language is ambiguous the court

14  should construe the language against the drafter of the contract"). Accordingly, the Court

15  should not interpret the EULA as applying to separate, individually purchased Joy-Cons.

16       Because there is no arbitration clause that is applicable to individually purchased Joy-

17  Cons, claims relating to these products cannot be compelled to arbitration.

18      **D.**     **Should the Court order arbitration on any claims, this action should be stayed, not dismissed, as to those claims.**

19

20

21

22     [5] This reading is supported by other portions of the agreement. For example, in order to opt out of the arbitration clause, a user must include the serial number of his or her Switch console. ECF No. 25 at 8. There is no requirement that a customer inform Nintendo that he or she purchased extra Joy-Cons or provide their corresponding serial numbers. Likewise, the

23  agreement warns a user that "[s]ome services available through the Console are subject to and governed by separate terms and conditions." *Id.* at 6.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - 23

1    The FAA explicitly permits a stay of proceedings pending arbitration. 9 U.S.C. § 3. The

2    FAA provides that if a court decides that a suit or proceeding "is referable to arbitration," the

3    court "shall on application of one of the parties stay the trial of the action until such arbitration

4    has been had." 9 U.S.C. § 3; *see also Dist. Council 16 Int'l Union of Painters and Allied*

5    *Trades v. LML Enters., Inc.*, 2013 WL 3802903, at *1 (N.D. Cal. July 18, 2013) (recognizing

6    discretion of the courts under 9 U.S.C. § 3 to stay claims that are subject to an arbitration

7    agreement). Courts in the Ninth Circuit have found that the better approach is to stay, rather

8    than dismiss, an action pending arbitration. *See, e.g.*, *Zeif v. Cintas Corp. No 2*, No. SACV 13-

9    00413 JVS (JPRx), 2013 U.S. Dist. LEXIS 200172, at *10 (C.D. Cal. Apr. 15, 2013).

10    At the very least, the arbitration agreement will not be enforceable as to at least some of

11    Plaintiffs' claims, namely their claims brought under California's consumer protection laws

12    seeking public injunctive relief. This Court may retain jurisdiction over any claims that it

13    determines are not subject to arbitration. *See, e.g.*, *Dornaus*, 2019 U.S. Dist. LEXIS 24522, at

14    *16–*17. However, should this Court order arbitration on any of Plaintiffs' claims, it should, as

15    the court did in *Dornaus*, stay this action. *Id*. at *17. Staying this action and retaining

16    jurisdiction over any claims sent to arbitration would allow this Court to facilitate post-

17    arbitration issues that may arise (e.g., a dispute over Nintendo's promise to pay all of the actual

18    filing and arbitrator fees for non-frivolous arbitrations). This Court should follow this "better

19    approach." *Zeif*, 2013 U.S. Dist. LEXIS 200172, at *10.

20                                    **V.      CONCLUSION**

21    For all of the foregoing reasons, Plaintiffs request that this Court exercise subject matter

22    jurisdiction over this action and deny Defendant Nintendo of America, Inc.'s Motion to

23    Compel Arbitration and Dismiss.

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - 24

1      DATED this 2nd day of December, 2019.

2
                            TOUSLEY BRAIN STEPHENS PLLC
3
                            By:___s/ Kim D. Stephens_____
4                               Kim D. Stephens, WSBA #11984
                                Jason T. Dennett, WSBA #30686
5                               Kaleigh N.B. Powell, WSBA #52684
                                1700 Seventh Avenue, Suite 2200
6                               Seattle, Washington 98101
                                Telephone: 206.682.5600
7                               Fax: 206.682.2992
                                Email: kstephens@tousley.com
8                                      jdennett@tousley.com
                                       kpowell@tousley.com
9
                                Benjamin F. Johns (admitted *pro hac vice*)
10                              Andrew W. Ferich (admitted *pro hac vice*)
                                Alex M. Kashurba (admitted *pro hac vice*)
11                              CHIMICLES SCHWARTZ KRINER
                                 & DONALDSON-SMITH LLP
12                              361 W. Lancaster Avenue
                                Haverford, Pennsylvania 19041
13                              Telephone: (610) 642-8500
                                Email: bfj@chimicles.com
14                                     awf@chimicles.com
                                       amk@chimicles.com
15
                                       *Interim Co-Lead Counsel*
16

17

18

19

20

21

22

23

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - 25

1

## CERTIFICATE OF SERVICE

2

I hereby certify that on December 2, 2019, I electronically filed the foregoing with the

3

Clerk of the Court using the CM/ECF system which will send notification of such filing to all

4

parties registered on the CM/ECF system.  All other parties (if any) shall be served in

5

accordance with the Federal Rules of Civil Procedure.

6

DATED at Seattle, Washington, this 2nd day of December, 2019.

7

_s/Kim D. Stephens_____

8

Kim D. Stephens

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION
TO COMPEL ARBITRATION AND DISMISS - 26