1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

THE HONORABLE THOMAS S. ZILLY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

RYAN DIAZ, et al.,

                Plaintiffs,

    v.

NINTENDO OF AMERICA INC.,

                Defendant.

No. 2:19-cv-01116-TSZ

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION AND DISMISS

NOTE ON MOTION CALENDAR:
December 23, 2019
Oral Argument Requested

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION AND DISMISS
(No. 2:19-cv-01116-TSZ)

146707330

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF CONTENTS

Page

I.    INTRODUCTION .................................................................................................... 1

II.   ARGUMENT ......................................................................................................... 1

      A.   Plaintiffs Do Not Dispute that They Accepted the EULA When They Set
           Up Their Switch Consoles .......................................................................... 1

      B.   Plaintiffs' Opposition Focuses Exclusively on Issues that Are Not
           Properly Before the Court ........................................................................... 2

           1.   The Parties Have Delegated to the Arbitrator All Issues Other than
                Whether an Arbitration Agreement Exists ......................................... 2

           2.   Plaintiffs' *McGill* Arguments Are Also Not Before the Court
                Because Washington Law Applies Outside of Arbitration ................... 4

      C.   Even if the Court Considers *McGill*, that Case Does Not Invalidate the
           Parties' Agreements to Arbitrate ................................................................ 5

           1.   *McGill* Does Not Invalidate the Arbitration Agreement Because
                Plaintiffs Do Not Actually Seek Public Injunctive Relief and the
                Arbitration Agreement Does Not Prohibit Public Injunctive Relief .......... 5

           2.   Even if *McGill* Invalidated the Two California Plaintiffs'
                Agreements, It Would Not Invalidate the Agreements of the 16
                Other Plaintiffs ................................................................................ 8

      D.   The Arbitration Provision Applies Unambiguously to Switch Accessories,
           Including Separately Purchased Joy-Con Controllers ......................................... 10

      E.   The Court Should Dismiss, Not Stay, Plaintiffs' Action .................................... 12

III.  CONCLUSION ..................................................................................................... 12

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION AND DISMISS
(No. 2:19-cv-01116-TSZ) – i
146707330

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

CASES

4

*AT&T Mobility LLC v. Concepcion,*
5
    563 U.S. 333 (2011) ........................................................................................................6

6

*Blair v. Rent-A-Center, Inc.,*
    928 F.3d 819 (9th Cir. 2019) ....................................................................................6, 7, 8
7

*Brennan v. Opus Bank,*
8
    796 F.3d 1125 (9th Cir. 2015) ........................................................................................3

9

*Carney v. Verizon Wireless Telecom, Inc.,*
10
    2011 WL 3475368 (S.D. Cal. Aug. 9, 2011) ..........................................................11, 12

11

*Chen v. Sierra Trading Post, Inc.,*
    2019 WL 3564659 (W.D. Wash. Aug. 6, 2019) ..........................................................2, 3
12

*Chiron Corp. v. Ortho Diagnostic Sys., Inc.,*
13
    207 F.3d 1126 (9th Cir. 2000) ........................................................................................2

14

*Cooper v. Adobe Sys. Inc.,*
15
    2019 WL 5102609 (N.D. Cal. Oct. 11, 2019)............................................................4, 6

16

*DeVries v. Experian Info. Sols., Inc.,*
    2017 WL 2377777 (N.D. Cal. June 1, 2017) ..................................................................4
17

*Flores v. Uber Techs.,*
18
    2018 WL 5937253 (C.D. Cal. Sept. 5, 2018) ..................................................................4

19

*Gonzalez-Torres v. Zumper, Inc.,*
    2019 WL 6465283 (N.D. Cal. Dec. 2, 2019) ..............................................................6, 7
20

21

*Henry Schein, Inc. v. Archer & White Sales, Inc.,*
    --- U.S. ----, 139 S. Ct. 524 (2019) ............................................................................3, 4
22

*Ionescu v. Extra Space Storage Inc.,*
23
    2019 WL 3997480 (N.D. Cal. Aug. 23, 2019) ............................................................6, 7

24

*Johnson v. JP Morgan Chase Bank, N.A.,*
    2018 WL 4726042 (C.D. Cal. Sept. 18, 2018) ................................................................5
25

*Kim v. Tinder, Inc.,*
26
    2018 WL 6694923 (C.D. Cal. July 12, 2018) ..................................................................7

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION AND DISMISS
(No. 2:19-cv-01116-TSZ) – ii
146707330

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Maher v. Microsoft Corp.*,
2018 WL 1535043 (N.D. Ill. Mar. 29, 2018) .......................................................................12

*McArdle v. AT&T Mobility LLC*,
2017 WL 4354998 (N.D. Cal. Oct. 2, 2017).........................................................................8

*McArdle v. AT&T Mobility LLC*,
2018 WL 6803743 (N.D. Cal. Aug. 13, 2018) ....................................................................10

*McArdle v. AT&T Mobility LLC*,
772 F. App'x 575 (9th Cir. 2019) ...........................................................................7, 8, 9, 10

*McGill v. CitiBank, N.A.*,
393 P.3d 85 (Cal. 2017) ................................................................................................ passim

*Mediterranean Enters., Inc. v. Ssangyong Corp.*,
708 F.2d 1458 (9th Cir. 1983) ............................................................................................11

*Michak v. Transnation Title Ins. Co.*,
148 Wn.2d 788 (Wash. 2003) ..............................................................................................12

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
460 U.S. 1 (1983) .................................................................................................................11

*Moule v. United Parcel Serv. Co.*,
2016 WL 3648961 (E.D. Cal. July 7, 2016) ........................................................................2

*Panorama Vill. Condo. Owners Ass'n Bd. of Directors v. Allstate Ins. Co.*,
144 Wn.2d 130 (Wash. 2001) ..............................................................................................11

*Perry v. MLB Advanced Media, L.P.*,
2018 WL 5861307 (C.D. Cal. May 30, 2018) ......................................................................7

*Revitch v. Uber Techs., Inc.*,
2018 WL 6340755 (C.D. Cal. Sept. 5, 2018) ......................................................................4

*Roberts v. AT&T Mobility LLC*,
2018 WL 1317346 (N.D. Cal. Mar. 14, 2018), *appeal docketed*, No. 18-15593
(9th Cir. Apr. 6, 2018) ........................................................................................................10

*Schnall v. AT&T Wireless Servs., Inc.*,
259 P.3d 129 (Wash. 2011)...................................................................................................5

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION AND DISMISS
(No. 2:19-cv-01116-TSZ) – iii
146707330

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF AUTHORITIES
### (continued)

Page(s)

*Sparling v. Hoffman Constr. Co.*,
864 F.2d 635 (9th Cir. 1988) ................................................................................12

*Sponheim v. Citibank, N.A.*,
2019 WL 2498938 (C.D. Cal. June 10, 2019) ........................................................6

*Tillage v. Comcast Corp.*,
772 F. App'x 569 (9th Cir. 2019) ..............................................................7, 8, 9, 10

*Tillage v. Comcast Corp.*,
No. 18-15288, ECF No. 65 (9th Cir. Sept. 9, 2019) ...............................................8

*Tillage v. Comcast Corp.*,
No. 3:16-cv-05969-VC, ECF No. 28-1 (N.D. Cal. Jan. 18, 2018) ..........................8

*Tillage v. Comcast Corp.*,
No. 3:17-cv-06477-VC, ECF No. 1 (N.D. Cal. Nov. 7, 2017) ...............................10

STATUTES

Federal Arbitration Act ........................................................................6, 7, 8, 11

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION AND DISMISS
(No. 2:19-cv-01116-TSZ) – iv
146707330

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

## I.    INTRODUCTION

2    Plaintiffs do not dispute that they accepted the End User License Agreement ("EULA").

3   They do not dispute that Nintendo presented them with the EULA during their Switch set-up

4   process. They do not dispute that they had an opportunity to review the terms of the EULA—

5   including the arbitration provision and delegation clause—or that they chose not to reject the

6   EULA altogether or opt out of arbitration. The Court's inquiry should therefore end there.

7    Plaintiffs' opposition hinges almost exclusively on their misunderstanding and

8   misapplication of *McGill v. CitiBank, N.A.*, 393 P.3d 85 (Cal. 2017). But the Court should not

9   even consider Plaintiffs' arguments because those arguments address the validity and

10  enforceability of the arbitration agreement—issues the parties delegated to the arbitrator. The

11  only issue for this Court is whether Plaintiffs agreed to arbitrate. They did.

12    Regardless, *McGill* has no bearing on the agreements between Plaintiffs and Nintendo.

13  *McGill* held that under California law an arbitration agreement cannot prohibit a plaintiff from

14  obtaining public injunctive relief. The arbitration provision here contains no prohibition on

15  public injunctive relief and instead allows the arbitrator to grant "whatever relief would be

16  available in a court under law or in equity." That language places the agreement beyond *McGill*'s

17  reach, as courts in the Ninth Circuit have recognized time and again. Plaintiffs also agreed that

18  outside of arbitration, Washington law applies, rendering *McGill* moot. And the EULA applies

19  explicitly to Switch "accessories," including separately purchased Joy-Con controllers.

20    Because Plaintiffs concede that they agreed to the EULA, the Court should grant

21  Nintendo's motion, order Plaintiffs to arbitration, and dismiss the action.

22

## II.    ARGUMENT

23  **A.    Plaintiffs Do Not Dispute that They Accepted the EULA When They Set Up
        Their Switch Consoles**

24

25    To start, Plaintiffs do not dispute that they accepted the EULA, including its arbitration

provision and delegation clause. As Nintendo explained in its Motion, courts routinely enforce

26

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION AND DISMISS
(No. 2:19-cv-01116-TSZ) – 1
146707330

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1  agreements to arbitrate where purchasers affirmatively assent after having a reasonable

2  opportunity to review the terms. In *Chen v. Sierra Trading Post, Inc.*, for example, the

3  Honorable Richard A. Jones concluded that the parties entered into a "valid agreement to

4  arbitrate" when the plaintiff accepted the terms of use after receiving adequate notice of and

5  having an opportunity to review the hyperlinked terms before accepting them. 2019 WL

6  3564659, at *3 (W.D. Wash. Aug. 6, 2019); *see also, e.g.*, *Moule v. United Parcel Serv. Co.*,

7  2016 WL 3648961, at *5 (E.D. Cal. July 7, 2016) (same).

8  And so it is here. Plaintiffs agreed to the EULA by affirmatively clicking the "Accept"

9  button during the Switch set-up process. *See* Declaration of Kristopher Kiel in Support of Motion

10  to Compel Arbitration and Dismiss ("Kiel Decl."), ECF No. 25 (Nov. 1, 2019) ¶ 17. They did so

11  after Nintendo presented those terms conspicuously via a hyperlinked button outlined in

12  pulsating bright blue that said, "View End User License Agreement," and after Nintendo asked

13  them to confirm that they had read the terms. *Id.* ¶¶ 14–17.

14  Simply put, Nintendo made the EULA available to Plaintiffs in several ways and with

15  several notices. Nintendo informed them that they could decline the EULA and return their

16  Switch. They even had the option of keeping the Switch while opting out of arbitration. They

17  chose to accept those terms and agree to the efficient, cost-effective method of arbitration to

18  resolve any disputes, should any arise in the future. Because Plaintiffs agreed to arbitration with

19  Nintendo, the Court should grant Nintendo's Motion to Compel. *See Chiron Corp. v. Ortho*

20  *Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

21      **B.      Plaintiffs' Opposition Focuses Exclusively on Issues that Are Not Properly**
22              **Before the Court**

23          **1.      The Parties Have Delegated to the Arbitrator All Issues Other than**
                **Whether an Arbitration Agreement Exists**

24  Despite acknowledging that they agreed to the EULA, Plaintiffs nevertheless raise two

25  invalidity challenges to the arbitration provision—that *McGill* renders it unenforceable and that it

26  does not cover disputes involving Joy-Con controllers purchased separately from the Switch

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION AND DISMISS
(No. 2:19-cv-01116-TSZ) – 2
146707330

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1  console. *See* Opp. at 16–20, 27–29. They assert incorrectly that the Court, not the arbitrator, must

2  resolve those challenges to determine whether to compel arbitration. *See id.* at 12 n.1.

3         Nintendo does not dispute that this Court must decide whether an agreement to arbitrate

4  exists, which is precisely why Nintendo has moved to compel arbitration. *See Henry Schein, Inc.*

5  *v. Archer & White Sales, Inc.*, --- U.S. ----, 139 S. Ct. 524, 530 (2019) ("To be sure, before

6  referring a dispute to an arbitrator, the court determines whether a valid arbitration agreement

7  exists."). What Plaintiffs ignore, however, is that once the Court concludes that Plaintiffs

8  assented to the EULA—including its arbitration provision and delegation clause—the Court's

9  inquiry ends because the parties agreed that an *arbitrator* will resolve any challenges to the

10  validity or enforceability of the arbitration agreement. *See Brennan v. Opus Bank*, 796 F.3d

11  1125, 1130 (9th Cir. 2015); *Chen*, 2019 WL 3564659, at *4.

12         When the parties have delegated to the arbitrator challenges to the validity or

13  enforceability of an arbitration agreement, "a court possesses no power to decide" those issues.

14  *Archer & White*, 139 S. Ct. at 530. That is precisely what the parties have done here. They

15  agreed that the arbitrator will decide all arbitrability issues aside from the question of whether an

16  agreement to arbitrate exists. *See* Kiel Decl. ¶ 8, Ex. A ("EULA") at 2 (agreeing that all

17  "disputes," including "formation, enforceability, performance, or breach," will be arbitrated).

18         Yet Plaintiffs' opposition focuses *exclusively* on the EULA's validity and enforceability,

19  asserting that the agreement is invalid under *McGill* and unenforceable because it does not cover

20  claims related to separately purchased Joy-Con controllers. Opp. at 16–29. In fact, their own

21  summary of their challenges to the EULA—"the arbitration agreement is *invalid*"—lays bare that

22  they do not challenge the existence of a contract or the delegation clause specifically. *Id.* at 12

23  n.1 (emphasis added). The Court therefore should not even consider Plaintiffs' arguments

24  because they concede that they assented to the EULA and delegated to the arbitrator any validity

25  and enforceability issues. *See Archer & White*, 139 S. Ct. at 530; *see also* EULA at 2.

26

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION AND DISMISS
(No. 2:19-cv-01116-TSZ) – 3
146707330

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1
2
3
4
5
6
7

This black-letter law is so routinely enforced that even those courts recently presented with a *McGill* challenge to an agreement that delegates arbitrability issues have reached the same conclusion. *See, e.g.*, *Cooper v. Adobe Sys. Inc.*, 2019 WL 5102609 (N.D. Cal. Oct. 11, 2019); *DeVries v. Experian Info. Sols., Inc.*, 2017 WL 2377777, at *3 (N.D. Cal. June 1, 2017). The delegation provision means that "the public injunctive relief question is reserved to the arbitrator" and is not for the Court to resolve. *Revitch v. Uber Techs., Inc.*, 2018 WL 6340755, at *5 (C.D. Cal. Sept. 5, 2018).

8
9
10
11
12
13

The same is true of questions about an arbitration agreement's scope. When the parties have delegated issues of enforceability and validity to the arbitrator, they have agreed that the arbitrator will in turn decide whether they agreed to arbitrate the claims asserted. In *Flores v. Uber Technologies*, 2018 WL 5937253, at *4 (C.D. Cal. Sept. 5, 2018), for example, the court held that because the delegation clause "clearly delegates the threshold issue of arbitrability to the arbitrator," the court could not "assess" the scope of the agreement.

14
15
16
17
18
19

Because the parties delegated to the arbitrator validity and enforceability questions and Plaintiffs do not challenge that delegation, *McGill*'s application and the arbitration provision's scope are not before the Court: "Where Plaintiffs do not attack the delegation provision itself, and there is clear and unmistakable evidence that the agreement between the parties delegated threshold issues of arbitrability to the arbitrator, courts must not decide the issue." *Id.* at *3 (internal quotation marks omitted).

20
21

### 2. Plaintiffs' *McGill* Arguments Are Also Not Before the Court Because Washington Law Applies Outside of Arbitration

22
23
24
25

The Court should also decline to consider Plaintiffs' arguments under *McGill* because the parties agreed, through a choice-of-law provision in the EULA, that Washington law applies to any dispute outside of arbitration. *See* EULA at 3. Plaintiffs' opposition completely ignores that provision, which bars consideration of the California rule adopted in *McGill*.

26

The parties agreed that Washington law would apply to any dispute not brought in

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION AND DISMISS
(No. 2:19-cv-01116-TSZ) – 4
146707330

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

arbitration, regardless of any conflict between Washington law and California law. Specifically, the EULA confirms that if "a dispute or [c]laim is not governed" by the arbitration provision, the dispute or claim is "subject to and governed by . . . the laws of the State of Washington[], except for its conflict of law rules." *Id.*; *see also Schnall v. AT&T Wireless Servs., Inc.*, 259 P.3d 129, 131 (Wash. 2011) (holding that choice-of-law provisions are usually enforced). Once Plaintiffs decided to disregard their agreement to arbitrate individually and to instead file suit in federal court, they lost any ability to invoke California law (or that of any state other than Washington) to attempt to invalidate the EULA's arbitration provision and remain in federal court as a putative class. The Court therefore has no occasion to engage in the unnecessary conflict-of-law analysis Plaintiffs urge or to consider Plaintiffs' arguments under *McGill*, a decision of California law for which there is no Washington analogue. *See* Opp. at 13–20.

**C.   Even if the Court Considers *McGill*, that Case Does Not Invalidate the Parties' Agreements to Arbitrate**

**1.   *McGill* Does Not Invalidate the Arbitration Agreement Because Plaintiffs Do Not Actually Seek Public Injunctive Relief and the Arbitration Agreement Does Not Prohibit Public Injunctive Relief**

Even if the Court considered Plaintiffs' argument under *McGill*, that case provides no refuge for Plaintiffs because, quite simply, the Plaintiffs do not actually seek public injunctive relief and the EULA does not prohibit the award of public injunctive relief. In fact, the EULA explicitly provides the opposite, authorizing the arbitrator to award "whatever relief would be available in a court under law or in equity"—including public injunctive relief. EULA at 2.

In the first instance, *McGill* applies only when a party seeks public injunctive relief, and Plaintiffs do not plead such relief. Their primary aim is to recover damages for alleged problems with the Joy-Con controllers they purchased, *not* to seek relief for the benefit of the general public. *See, e.g.*, Am. Compl., ECF No. 21 (Sept. 27, 2019) ¶¶ 185–86; *Johnson v. JP Morgan Chase Bank, N.A.*, 2018 WL 4726042, at *7 (C.D. Cal. Sept. 18, 2018). Although they request a vague injunction to prevent alleged "unlawful, deceptive, fraudulent, and unfair business

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION AND DISMISS
(No. 2:19-cv-01116-TSZ) – 5
146707330

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1   practices," Am. Compl., ECF No. 21 (Sept. 27, 2019) at 93(B), that relief is at most "a mere

2   incidental benefit" to their claims for monetary damages and is not public injunctive relief,

3   *Sponheim v. Citibank, N.A.*, 2019 WL 2498938, at *4 (C.D. Cal. June 10, 2019).

4           Regardless, Plaintiffs make too much of *McGill*, misinterpreting that decision in a way

5   that would effectively gut all class-action waivers and subvert Supreme Court precedent. *McGill*

6   narrowly held that prohibiting entirely the right to seek public injunctive relief in any forum was

7   "unenforceable under California law."[1] *McGill*, 393 P.3d at 87. The court invalidated the parties'

8   agreement because it limited the available relief to only the individual and therefore prohibited

9   the award of public injunctive relief. *See id.* at 94.

10          But *McGill* did not hold that public injunctive relief cannot be arbitrated. *See Cooper*,

11  2019 WL 5102609, at *7. *McGill* also did not hold that any arbitration of public injunctive relief

12  must be on a classwide basis. *Blair v. Rent-A-Center, Inc.*, 928 F.3d 819, 829 (9th Cir. 2019).

13  And *McGill* did not hold that class-action waivers are themselves invalid. *Ionescu v. Extra Space*

14  *Storage Inc.*, 2019 WL 3997480, at *4 (N.D. Cal. Aug. 23, 2019). Nor could *McGill* have so

15  held, as that would directly contravene Supreme Court precedent permitting class-action waivers.

16  *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 336 (2011).

17          Time and again, courts in the Ninth Circuit have recognized *McGill*'s limited holding by

18  distinguishing between (1) *valid* arbitration agreements that waive class actions but permit the

19  arbitrator to grant any available relief—and therefore preserve a claimant's ability to pursue

20  public injunctive relief—and (2) *invalid* arbitration agreements that prohibit an award of public

21  injunctive relief in any forum. In *Gonzalez-Torres v. Zumper, Inc.*, 2019 WL 6465283, at *8

22  (N.D. Cal. Dec. 2, 2019), for example, the court enforced the arbitration agreement and class-

23  action waiver because "the Agreement does not prohibit plaintiff from being awarded public

24  injunctive relief as a remedy for his individually-asserted claims in arbitration." In *Ionescu*, 2019

25

26  _____

    [1] In *McGill*, the California Supreme Court referenced its prior *Broughton-Cruz* rule—that public injunctive relief could not be arbitrated at all. 393 P.3d at 89–90. The Ninth Circuit has held that the Federal Arbitration Act ("FAA") preempts that rule. *See Blair*, 928 F.3d at 827.

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION AND DISMISS
(No. 2:19-cv-01116-TSZ) – 6
146707330

WL 3997480, at *4, the court enforced the arbitration agreement and class-action waiver because the agreement did not "preclude the arbitrator from issuing any relief beyond the individual claimant." *See also Kim v. Tinder, Inc.*, 2018 WL 6694923, at *4 (C.D. Cal. July 12, 2018); *Perry v. MLB Advanced Media, L.P.*, 2018 WL 5861307, at *7 (C.D. Cal. May 30, 2018).

Unlike Plaintiffs, these courts recognized the key distinction between the waiver of a *procedural* mechanism for obtaining relief—a waiver of the right to proceed with a class or representative action—and a prohibition on obtaining public injunctive relief—a statutory *remedy* that cannot be waived. *See, e.g.*, *Gonzalez-Torres*, 2019 WL 6465283, at *8. As the court in *Kim* explained, the "fact that Plaintiff may not seek a public injunction . . . as part of a class or representative action is irrelevant" to whether public injunctive relief is available. 2018 WL 6694923, at *4.

*McGill*—and its proper application—require drawing the same distinctions here. The EULA's arbitration provision expressly provides that the arbitrator "shall be empowered to grant *whatever* relief would be available in a court under law or in equity." EULA at 2 (emphasis added). And like other agreements upheld in the face of a *McGill* challenge, the EULA limits only the *procedural* mechanism by which someone can seek that relief. *See id.* ("[T]he parties waive their right to file a class action or seek relief on a class basis . . . ."). Because the arbitrator expressly has the power to grant all available relief, including public injunctive relief, the *McGill* rule does not reach the EULA's arbitration provision and class-action waiver.

The recent Ninth Circuit trilogy interpreting *McGill*—*Blair*, *McArdle*, and *Tillage*—on which Plaintiffs rely so heavily does not change the analysis.[2] In fact, those cases prove Nintendo's point that *McGill* invalidates an arbitration agreement only when the agreement expressly prohibits someone from obtaining public injunctive relief in any forum. In the lead

---

[2] Although *Blair* incorrectly decided the issue of FAA preemption, this Court is bound by that decision. Nintendo notes, however, that there are currently pending motions for panel rehearing and *en banc* rehearing to reexamine *Blair*'s preemption holding. *See, e.g.*, *Tillage v. Comcast Corp.*, No. 18-15288, ECF No. 65 (9th Cir. Sept. 9, 2019) (directing response to petition for panel and *en banc* rehearing).

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION AND DISMISS
(No. 2:19-cv-01116-TSZ) – 7
146707330

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

case, *Blair v. Rent-A-Center, Inc.*, the Ninth Circuit held two things: (1) the FAA did not

preempt *McGill* and (2) the arbitration agreement at issue was invalid under *McGill* because it

prohibited "relief that would affect [Rent-A-Center] account holders *other than you*." 928 F.3d at

823 (emphasis added). In reaching those conclusions, the Ninth Circuit distinguished between an

acceptable waiver of procedural devices in arbitration—the right to proceed on a class or

representative basis—and an unacceptable prohibition on the right to seek public injunctive relief

in all forums. *Id.* at 829 ("The *McGill* rule leaves undisturbed an agreement that both requires

bilateral arbitration and permits public injunctive claims.").

In *Tillage* and *McArdle*, memorandum opinions issued the same day as *Blair*, the Ninth

Circuit concluded that those agreements were also invalid under *McGill*. *Tillage v. Comcast

Corp.*, 772 F. App'x 569, 569 (9th Cir. 2019); *McArdle v. AT&T Mobility LLC*, 772 F. App'x

575, 575 (9th Cir. 2019). The arbitration agreements in both cases, unlike the EULA here,

contained language restricting the relief available to only the individual proceeding in arbitration.

*See Tillage v. Comcast Corp.*, No. 3:16-cv-05969-VC, ECF No. 28-1, Ex. A at 17 (N.D. Cal. Jan.

18, 2018) ("The arbitrator may award relief only in favor of the individual party seeking relief.");

*McArdle v. AT&T Mobility LLC*, 2017 WL 4354998, at *1 (N.D. Cal. Oct. 2, 2017) ("The

arbitrator may award declaratory or injunctive relief only in favor of the individual party . . . .").

The EULA contains no language like that in *McGill* or the Ninth Circuit trilogy

interpreting *McGill*. Unlike those other agreements, the EULA expressly permits the arbitrator to

grant "whatever relief would be available in a court under law or in equity." EULA at 2. The

Court should reject Plaintiffs' misapplication of *McGill*.

## 2. Even if *McGill* Invalidated the Two California Plaintiffs' Agreements, It Would Not Invalidate the Agreements of the 16 Other Plaintiffs

Plaintiffs rightfully realize that even if their *McGill* argument succeeds with respect to the

two California Plaintiffs, they must somehow persuade the Court to invalidate the agreements for

the remaining 16 Plaintiffs who do not reside in and did not buy their Switch video-game console

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION AND DISMISS
(No. 2:19-cv-01116-TSZ) – 8
146707330

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

or Joy-Con controllers in California. *See* Opp. at 25–26. But their assertion—without citation to a single case addressing a similar situation—that the non-severability language applies not only to a single Plaintiff's arbitration agreement but also to every such agreement fails.

First, the non-severability clause can only nullify a specific arbitration agreement for which the class-action waiver in that agreement has been found unenforceable. The clause cannot invalidate *every* arbitration agreement entered into by Nintendo and *any* purchaser at *any* time in *any* state. That outcome is dictated by the language of the clause itself: If "the class-action waiver . . . is void or unenforceable," then "*the parties* shall be deemed to have not agreed to arbitrate Claims." EULA at 2 (emphasis added). The reference to "parties" confirms that the non-severability clause serves only to nullify an arbitration agreement between a specific purchaser and Nintendo. *See id.* at 1 ("This is an Agreement . . . between *you* and Nintendo . . . ." (emphasis added)). The clause contains no language purporting to invalidate every single arbitration agreement in existence if just one class-action waiver is found invalid. Any other reading would permit the gamesmanship Plaintiffs attempt to engage in here—using a rule in one state to invalidate otherwise sound arbitration agreements in every other state in the country.

The authority Plaintiffs cite in their Opposition has nothing to do with the wholesale invalidation of every arbitration agreement when the class-action waiver in a single agreement has been deemed unenforceable. *See* Opp. at 25. In *Tillage* and *McArdle*, the Ninth Circuit held that because *McGill* invalidated those class-action waivers—which prohibited public injunctive relief—the rest of the arbitration agreements as to those other California parties were likewise invalid because they contained non-severability clauses. *See McArdle*, 772 F. App'x at 575. The court did not address—let alone, reach any conclusion about—whether the invalidation of an arbitration agreement under *McGill* and the agreement's own non-severability clause could in turn invalidate an agreement governed by another state's law or entered with the resident of another state. Indeed, the plaintiffs in *Tillage* and *McArdle* sought to certify only a class of California residents—not a nationwide class, as Plaintiffs seek here. *See McArdle v. AT&T*

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION AND DISMISS
(No. 2:19-cv-01116-TSZ) – 9
146707330

*Mobility LLC*, 2018 WL 6803743, at \*3, 13 (N.D. Cal. Aug. 13, 2018); *Tillage v. Comcast Corp.*, No. 3:17-cv-06477-VC, ECF No. 1, Ex. B ¶ 230 (N.D. Cal. Nov. 7, 2017).

In fact, the Northern District of California has rejected Plaintiffs' argument, recognizing that the invalidation of an arbitration agreement with a California resident will not apply to an identical agreement with a non-California resident. In *Roberts v. AT&T Mobility LLC*, the court held that as to the California-resident plaintiffs, the arbitration agreement was invalid under *McGill* because it permitted "injunctive relief only in favor of the individual party seeking relief." 2018 WL 1317346, at \*8 (N.D. Cal. Mar. 14, 2018), *appeal docketed*, No. 18-15593 (9th Cir. Apr. 6, 2018). But—and this is critical—the court did *not* invalidate the arbitration agreement with the Alabama plaintiff. Because the Alabama plaintiff had "no *McGill* argument" for claims "governed by Alabama law," the Court ordered the Alabama plaintiff to arbitrate individually his claims against AT&T. *Id.* at \*9. The court did so even though the agreement struck down under *McGill* contained the same kind of non-severability clause Plaintiffs here contend invalidates every single arbitration agreement with Nintendo. *See id.* at \*8.

Accordingly, even assuming *McGill* somehow invalided the arbitration provisions for the California Plaintiffs, it would have no effect on the separate agreements with the other Plaintiffs.

**D.    The Arbitration Provision Applies Unambiguously to Switch Accessories, Including Separately Purchased Joy-Con Controllers**

Plaintiffs' last-ditch attempt to dodge their agreement to arbitrate focuses on some Plaintiffs' Joy-Con controllers allegedly purchased separately from the Switch console. *See* Opp. at 27. They argue, incorrectly, that the EULA does not cover those controllers. *See id.* As Nintendo discussed above, the parties agreed to delegate to the arbitrator any issues related to the scope of the arbitration agreement—including whether the EULA covers disputes over separately purchased Joy-Con controllers—and the Court should not consider the issue.

But if the Court proceeds to examine the scope of the arbitration provision, Plaintiffs' claims fall squarely within that provision. When a contractual term is undefined, it must be given

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION AND DISMISS
(No. 2:19-cv-01116-TSZ) – 10
146707330

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

its plain meaning. *See Panorama Vill. Condo. Owners Ass'n Bd. of Directors v. Allstate Ins. Co.*, 144 Wn.2d 130, 140 (Wash. 2001). If there are any ambiguities regarding the scope of an arbitration agreement—and here, there are not—the FAA requires those ambiguities, even if the "problem at hand is the construction of the contract language itself," to be construed in favor of arbitration. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).

The EULA expressly relates to "your access to and use of this Nintendo video game console, *its accessories*, the Software . . . , and any services available using this Nintendo video game console." EULA at 1 (emphasis added). Despite Plaintiffs' attempts to muddle what "its accessories" means, the phrase's meaning is plain—all Nintendo items to be used with the Switch console. Joy-Con controllers, in turn, are items to be used with the console, whether purchased separately or not. Indeed, the Joy-Con controllers—whether purchased with or separately from the Switch console—have no utility other than in conjunction with the Switch console. The plain meaning is further bolstered by the arbitration provision's application to "all disputes or claims arising out of or relating to" the items the EULA covers. EULA at 2; *see also Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983). To the extent there is any ambiguity here, which there is not, the Court should resolve it in favor of compelling arbitration. *Cone Mem'l Hosp.*, 460 U.S. at 24–25.

Indeed, the Southern District of California has similarly rejected Plaintiffs' argument. In *Carney v. Verizon Wireless Telecom, Inc.*, the plaintiff argued that the arbitration provision in her wireless-service customer agreement did not encompass claims related to her cell-phone purchase because the agreement did not explicitly reference phones purchased separately from wireless service. 2011 WL 3475368, at *3 (S.D. Cal. Aug. 9, 2011). The court concluded that the arbitration agreement covered not just wireless service but also cell phones because "the terms of the Customer Agreement" applied "to the entire bundled transaction" and did not "exclude" cell phones. *Id.*; *see also Maher v. Microsoft Corp.*, 2018 WL 1535043, at *4 (N.D. Ill. Mar. 29, 2018) ("[A] dispute under a contract with no arbitration clause may nevertheless fall within a

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION AND DISMISS
(No. 2:19-cv-01116-TSZ) – 11
146707330

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

broadly worded arbitration clause in another contract."). If a smartphone, which can be used for many purposes outside of wireless service, was inclusive of the arbitration agreement, then so too is a Joy-Con controller, which has no utility apart from the Switch console.

Each of the Plaintiffs who allegedly purchased Joy-Con controllers separate from their Switch consoles had already agreed to the EULA—including the EULA's application to Switch-console accessories—when they earlier purchased and set up their Switch console. Had they reviewed the EULA's terms, presented by a conspicuous hyperlink, they would have understood that the EULA governed Joy-Con controllers, whether the controllers came with the console or were purchased separately. And they could have rejected those terms by returning the Switch console for a full refund or chosen not to arbitrate such claims by opting out of arbitration. They cannot now rely on their failure to read the EULA and understand its coverage. *See Michak v. Transnation Title Ins. Co.*, 148 Wn.2d 788, 799 (Wash. 2003).

### E.   The Court Should Dismiss, Not Stay, Plaintiffs' Action

Finally, Plaintiffs argue that if Nintendo's Motion succeeds, the Court should stay, rather than dismiss, this action. Opp. at 24. But dismissal is appropriate because the EULA bars all of Plaintiffs' claims from being litigated in court. *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988). There is no reason for this action to remain in federal court in any form because the claims Plaintiffs assert, and the arguments they raise in opposition to arbitration, must be arbitrated. The Court should dismiss the action, rather than staying it.

### III.   CONCLUSION

Plaintiffs accepted the EULA and agreed to arbitration when they set up their Switch video-game consoles and chose not to reject the terms by returning their consoles and also when they chose to keep their consoles but not opt out of the arbitration provision. The Court therefore has no occasion to consider their arguments about the arbitration provision's invalidity or enforceability. But even if the Court considers those arguments, it should reject them and grant Nintendo's motion to compel arbitration and dismiss this action.

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION AND DISMISS
(No. 2:19-cv-01116-TSZ) – 12
146707330

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

2     Dated: December 23, 2019            By:   s/ Eric J. Weiss

3                                David J. Burman, WSBA No. 10611
Eric J. Weiss, WSBA No. 44807

4                                Mallory Gitt Webster, WSBA No. 50025

5                              **Perkins Coie LLP**
1201 Third Avenue, Suite 4900

6                                Seattle, WA 98101-3099
Telephone: 206.359.8000

7                                Fax: 206.359.9000
Email: DBurman@perkinscoie.com

8                                Email: EWeiss@perkinscoie.com

9                                Email: MWebster@perkinscoie.com

10                                *Attorneys for Nintendo of America Inc.*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

REPLY IN SUPPORT OF MOTION TO
COMPEL ARBITRATION AND DISMISS
(No. 2:19-cv-01116-TSZ) – 13
146707330

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

**CERTIFICATE OF SERVICE**

2

        I certify under penalty of perjury that on December 23, 2019, I caused to be electronically

3

filed the foregoing Reply in Support of Motion to Compel Arbitration and Dismiss with the

4

Clerk of the Court using the CM/ECF system, which will send a notification of the filing to the

5

email addresses indicated on the Court's Electronic Mail Notice List.

6

        Dated: December 23, 2019

7

                               s/ Mallory Gitt Webster

8

                               Mallory Gitt Webster, WSBA No. 50025

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

CERTIFICATE OF SERVICE – 1

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

146707330